In the Matter of the Accounting of ALBERT E. LAMB, as Sole Surviving Trustee of a Trust Contained in the Second Clause of the Will of ARTHUR GIBB, Deceased, for the Benefit of SARAH M. GIBB, etc.

EMILY M. GIBB and Others, Appellants; ALBERT E. LAMB and Others, Respondents.

Second Department, February 21, 1918.

Will — construction — trust — death of beneficiaries prior to life tenant — disposition of interest accruing during life estate.

A testator who had been contributing $10,000 yearly for several years toward the support of his stepmother, selected five out of his eight brothers and sisters as his beneficiaries for the reason that the others were " amply provided for," and gave to each of his three sisters $200,000 and then provided share and share alike for his two brothers, $200,000 and capital stock and bonds of the value of $77,000. But out of the gift of the $200,000 to the brothers he made a provision for his stepmother for her life, committing the property for that purpose to trustees who were to pay the income to her and principal " together with all interest and income earned and accrued and unpaid " to his brothers. The return on the $200,000 at the usual rate of five per cent just equaled the amount which the testator had for some years provided his stepmother. The brothers died before the stepmother.

Held, that it was the testator's intention to give his brothers the $200,000 share and share alike, whether they did or did not survive the life tenant, but the direction that interest accruing during the life estate should be paid the brothers was invalid and it should be paid to the stepmother's representatives.

RICH and BLACKMAR, JJ., dissented on the question of interest; PUTNAM, J., dissented, with opinion, on the question of the vesting of the principal.

SEPARATE APPEALS by Emily M. Gibb and others, by Bache McE. Whitlock and Harold Whitfield Carhart, Jr., infants, and by the Brooklyn Trust Company, as executor, etc., of Sarah M. Gibb, deceased, from parts of a decree of the Surrogate's Court of the county of Nassau, entered in the office of said Surrogate's Court on the 14th day of July, 1917, settling the accounts herein.

*Francis L. Archer* [*William N. Dykman* with him on the brief], for the appellant Brooklyn Trust Company, as executor, etc.

*Arthur H. Masten* [*Sinclair Hamilton* with him on the brief], for the appellants Emily M. Gibb and others.

*Edward B. Thompson*, special guardian for Bache McE. Whitlock and Harold Whitfield Carhart, Jr., infants.

*John Hill Morgan*, for the respondents Anna P. Gibb, individually and as executrix, etc., and others.

*Jeremiah Wood*, special guardian for Arthur Gibb and Robert Pinkerton Gibb, infants.

THOMAS, J.:

In 1905 John Gibb died leaving an estate of some $3,000,000, in which his eleven children and their stepmother and testator's widow, Sarah M. Gibb, were given interests. The children were concerned in making more ample provision than the will afforded the widow, to which the present testator, Arthur Gibb, contributed $10,000 yearly during the last several years of his life, in the form of interests in the business of Frederick Loeser & Co., in which his own fortune was largely invested. Arthur Gibb had no issue, but he had married the widow of his brother John Richmond Gibb, who had left her and her three children something over $400,000. Such widow and her children take the present testator's residuary estate, which amounts to $1,600,000 and comprised the bulk of his property. Out of property not cast in the residuary, Arthur Gibb made some provision for certain of his brothers and sisters, and also for a nephew and two nieces. He left him surviving only eight of his brothers and sisters,

and from them he selected but five for his benefactions, for which he gave the reason that the others " are amply provided for," and at the same time expressed his affection for them. Such mode of selecting beneficiaries shows that his gifts were not determined by preference or equality in affection, but that he was influenced by the necessities of the several brothers and sisters for whose pecuniary welfare he was solicitous. And so to three sisters he gave each $200,000, and he provided, share and share alike, for his brothers Henry Elmer Gibb and Lewis Mills Gibb $200,000 and his capital stock and debenture bonds of the value of $77,000 in the firm of Mills & Gibb. But out of the gift of the $200,000 to the brothers he made a provision for his stepmother, Sarah M. Gibb, for her life, committing the property for that purpose to two trustees, who should pay the income to her. It is significant that the expectable yearly return on $200,000 at the usual rate of five per centum would just equal the $10,000 which the testator for some years had provided his stepmother, and that he imposed the burden, which he had borne, on his two brothers by subjecting to his mother's life use the $200,000 appointed to them. But they died before the mother, and the takers of the residuary estate urge that it was the intention of the testator that, in such event, the relatively small provision made for those related to him in blood should swell the great estate left to strangers in blood. Such contention is based upon the provision that the will gave the $200,000 to trustees to pay the income thereof to the stepmother and upon her decease to pay it to the brothers. So the rule sometimes applied where there is a direction to pay to beneficiaries, is invoked with technical rigidity. What, then, becomes of the painstaking discrimination, whereby the testator passed by a brother and sisters held in declared affection, because they were not in need, and selected five, but on two of them placed the burden of the mother's partial support, except as to the interest in Mills & Gibb, amounting as to each brother to the sum of $38,500? If the appellant's construction prevail, the testator must be deemed to have considered that $38,500 to each would fulfill their needs in case they died before their stepmother, even if they left families. And yet, when he executed

the will, he knew that Lewis Mills Gibb had a wife and two sons, one born in 1902 and one in 1906, and that Henry Elmer Gibb had a son Arthur Gibb, born in 1908, and so some two years old when the will was made. It is true that he did give the child Arthur Gibb, who was testator's namesake, $100,000, but otherwise made no provision for the family of his brothers if they be deprived of this $200,000, unless it be found in the $38,500 already mentioned — a sum affording a scanty support. It would be a harsh criticism of the testator's affection or judgment to attribute to him the thought that the gift to each brother was one that could not benefit him unless he survived the mother,. and that in case of earlier death his family should be deprived of it. I cannot credit the intention so accredited to him by appellants, which is tantamount to this:. that he, discriminatingly considering his brothers' and sisters' needs, not only deprived his brothers of the use of the $200,000 during the mother's life, but also took it from their families, if they failed to live to the day of payment. It is noticeable that he gave each of three sisters $200,000, and that to the brothers he gave $200,000 plus $77,000 — the Mills. & Gibb interests — or, in all, $277,000, or $138,500 each, or $61,000 less than he gave to each sister. If there be added the legacy of $100,000 to the testator's little namesake, Arthur, son of Henry (selected with two nieces from *sixteen* nephews and nieces), the total amount to the brothers is $377,000, which if equally divided would approximate the $200,000 given to each sister. He did not use usual words of immediate gift to the brothers as in the case of the sisters. And yet he used words that to the usual intelligence in business matters mean the same thing. He placed the title in trustees and told them on his widow's death to pay it to his brothers. Would any business man suspect, where he committed money to another to pay to a specified person at a time which must come, that he was placing it at the hazard of non-payment, if the payee were dead at the time of payment? The title was in trustees only to support the trust, and what became of the remainder during the widow's life, if the brothers did not have it? Did it go to the heirs, or fall into the residue? Mr. Gibb created estates in his collateral relatives, and then gave the rest of

Second Department, February, 1918. [Vol. 182.

his estate in trust for the use of his widow for life or widow-hood, with power of appointment by will, or, in default thereof, to his stepchildren. Does any one seriously believe that the testator, surveying his scheme of disposition, intended to include this remainder in the residue? I cannot think so. He was visualizing his brothers and sisters, his wife and her children, and blocking out what portions of his property they should take. He designated amounts for collaterals according to their several needs as he appreciated them, and with such sums deducted gave the balance as a distinct proportion of his property to his immediate family. Mr. Gibb, a man of business, understood words of business; he knew just what his family was, what the needs were, what his own desires were, and he apportioned the property accordingly. What he intended is to be decided as a question of fact, and the majority of the court find the fact to be that the testator intended to give his brothers the $200,000, share and share alike, whether they did or did not survive the life tenant. The conclusion reached is in exact accordance with the rule relating to the payment or division of money to beneficiaries upon the termination of a preceding estate. All of them respect the rule that the intention of the testator prevails over the terms in question. Referring to the rule that " if futurity is annexed to the substance of the gift, the vesting is suspended," Chief Judge PARKER, in *Matter of Crane* (164 N. Y. 71), wrote: " It is true that, to these general rules of construction there are exceptions, and the cases noting them can be grouped under two heads: *First*. If the postponement of the payment is for the purpose of letting in an intermediate estate, then the interest shall be deemed vested at the death of the testator and the class of legatees is to be determined as of that date, for futurity is not annexed to the substance of the gift." That such is the rule is beyond question. (*Matter of Embree*, 9 App. Div. 602, 605; affd., 154 N. Y. 778; *Loder* v. *Hatfield*, 71 id. 92, 100; *Matter of Young*, 145 id. 535; *Campbell* v. *Stokes*, 142 id. 23.) In the case at bar an intermediate estate was let in. Save for that, the right of enjoyment in the brothers would have been intermediate on the testator's death. Does any one doubt that? The brothers were mature; they had families; there was no impedi-

ment to their taking; there was no alternative gift or gift over; the testator deemed them in need of his bounty. Why, then, was their enjoyment postponed? No one may sincerely deny that it was to make, between the testator's death and the actual enjoyment by the brothers, provision for the mother. So the purpose for letting in the life estate is obvious. One value of the pay and divide rule as regards a legatee is in the opportunity it aids to hold in suspense an estate from those not prepared to take it, or because the takers are not ascertained. It is for that reason, if the will be otherwise neutral, that it is usually allowed to prevail where prudence, discipline or precaution against unthrift (as in *People's Trust Co.* v. *Flynn*, 188 N. Y. 385, 394) prompt postponing of the vesting, or where those who may take are uncertain or unknown, or their condition not apprehensible. The generalization is not perfect, but is suggestive. It may be illustrated by decisions cited by the appellants. In *Matter of Crane (supra)*, among other complications, the will provided: " Upon the decease of my said wife I order and direct that my estate be divided as follows, viz.: Equally between my brothers and sisters and my niece, Flora W. Bulkley, each one to take one equal share thereof. * * * Provided further, that if any of my said brothers and sisters and niece shall depart this life before my said wife, leaving lawful issue him or her surviving, then the share of the one so dying shall be paid over to their issue in equal shares." The will shows that the testator was dealing with future vague conditions that could not be forecast. In *Matter of Pulis* (220 N. Y. 196) one direction was that within two years after the death of two named persons the executors should sell a house and divide the net proceeds, one-half between the children of one so dying, and the other half between the children of the other so dying. It was a typical case of the appropriate use of the " divide and pay over " rule, applied to a class, and there was found no intention to override it. In *Matter of Vander Roest* (220 N. Y. 664) the direction was that after the death of the widow " the trust in my personal property shall cease, and the same shall be distributed equally among my surviving children share and share alike." Similarly the provision was for a class in

*Matter of Baer* (147 N. Y. 348) and *Matter of Leonard* (218 id. 513, 521). In this connection may be noticed *Salter* v. *Drowne* (205 N. Y. 204, 216) and *Matter of Hogarty* (62 App. Div. 79). But in *Brooklyn Trust Co.* v. *Phillips* (134 App. Div. 697; affd., 201 N. Y. 561) the " pay and divide " term was used, where, after a gift in trust to pay the income to a woman for her life, the gift was to her two children named, " if they or either of them shall have arrived or when either of them shall arrive at the age of twenty-one years," etc. The postponement of enjoyment was not alone to let in a precedent estate, but postpone to the attainment of majorities. Cases that defer vesting until the beneficiaries shall reach fixed ages, when payment shall be made, are illustrated by the diverse views expressed in the opinion in *Dickerson* v. *Sheehy* (156 App. Div. 101), where decisions are reviewed. It was affirmed with a dissenting opinion by Chief Judge CULLEN, in 209 New York, 592. I think that under such two classifications may be placed all the cases cited by the appellant, and *Dougherty* v. *Thompson* (167 N. Y. 472) falls under both. There is brought to attention no instance where the direction was to pay at the death of the life beneficiary to a named adult person competent to take, and the gift was held not to vest at the testator's death, unless there were other evidence of such intention. I do not venture to assert that such an instance does not exist, but my examination, made with considerable, although may be insufficient, industry, fails to reveal it. I cannot but think that, if there is such an instance in this State, counsel should have brought it to the attention of the court. It is true that there are presented cases where one or more named persons are included in a class with " surviving grand-children," as that by the surrogate in *Matter of Stocum's Will* (94 N. Y. Supp. 588), or as in *Geisse* v. *Bunce* (23 App. Div. 289), where the trust was to pay the income from land to two named persons and the survivor for life, and upon the death of both *without issue* " to sell the land and divide the proceeds *equally* between the then living children of these life beneficiaries and the issue of such of said children as may have died before the death of the survivor leaving issue. In case of the decease of both of the life beneficiaries, without

leaving issue surviving the survivor of them, which proved
to be the fact, then the trustee was directed to pay and
divide the proceeds equally between Nathaniel R. Bunce,
Augusta L. Romer, William F. Geisse and the children of
Chauncey D. Bunce." The gift to the class was contingent
on its face, and the members of the class that would take the
contingent interest were unknown and what each would take
was not ascertainable until the life estate ended. Where
there is gift in trust for the benefit of A for life, and then a
direction to pay to B, has it been· decided that B had a
contingent estate *merely because the direction was to pay, or
to divide?* Whether such a decision does or does not exist,
it is not before the court. But I would impress carefully
the thought that postponement of payment for the purpose
of letting in an intermediate estate should be inferred where
there is such a trust and direction to trustees on its termina-
tion to pay to a named person, where no possible reason,
other than provision for such intermediate beneficiary, can
be suggested for deferring payment to a blood relative named,
a sane, competent adult, whose need of the money the will
indicated. The proposition that a person needs money only
in case he lives, disputes the universal striving to gather it
in case he should die and leave his family in need of it. It
is unnecessary to go farther than I have stated. If that is
insufficient, I perceive no occasion for the first exception,
so deliberately laid down in the *Crane* case. Where a testator
defers vesting after his death, he does it because there is a
recognized disqualification or tendency of the beneficiary that
he would have abated or thwarted in its effect, by time,
education, restraint, or because he does not and cannot foresee
what the characteristics will be or how they will develop,
or of what a class will be composed, or what will be the
personality of its members, or their family relations, or because
the property must be kept free for supplying successive or
concurrent benefactions. Of course, there may be other con-
siderations. But I can think of none applicable to the present
case. There were persons " in being, who would have an
immediate right to the possession of the property, on the
determination " of the precedent estate, and no disabilities
attached to such persons, and their need of the money was

Second Department, February, 1918.  [Vol. 182.

recognized by the testator. So I ask, finally, if the payment was not postponed to let in an intermediate estate, for what reason was it postponed? While I conclude that the principal vested in the two brothers, the direction that interest thereon accruing during the life estate should be paid them. was invalid, and should be paid to Mrs. Gibb's representatives. Mrs. Gibb died on December 27, 1916. She had received no income on the trust fund since the preceding August first, and it amounted to $4,846.15. The money was loaned to Frederick Loeser & Co., and the custom was to pay it at the end of each six months, and in the present case it would have been payable on January 31, 1917. The question is whether it passes under the will to the estate of the two brothers or to the estate of Mrs. Gibb. The will directs that the trustees shall pay the principal " together with all interest and income earned and accrued and unpaid " to testator's brothers. Does that direct an accumulation? The loan to the Loeser Company was on an arrangement, as shown by the practice, that the interest should be paid at the end of each six months. Even if interest is deemed to accrue from day to day, it is not collectible daily. The trustees could not have collected it before Mrs. Gibb died. But that is not the test. The interest was an incident of the principal and had no unrelated and independent status. Each unit of principal grows through continuing time and is owned by the person who owns the principal. Who owned the principal while it was so increasing? The trustees did. But their title was only to support the trust to pay to Mrs. Gibb. How could they take title to pay her and yet pay to somebody else? It is answered that they could do so because the will so directs. If so, the will gives the trustees title to the principal, among other things, for the purpose of earning money thereon during a precedent estate, to pay to the remaindermen. Now, the learned counsel for the respondent, with his usual helpful, fair presentation, says that such thing could not be done if the trustees had received the money, and that the case would then fall within *Matter of Keogh* (112 App. Div. 414). But in principle is there a distinction? The trustee has title to the interest because he has title to the principal, and his tenure is not affected

because it had not been paid into his hand, or because, according to the terms of the loan, the sum is not yet collectible. The statute is not that the takers of an estate shall not accumulate by hoarding in their hands, but the law forbids accumulations, however effected, except in case of minorities. Income may accumulate by the connivance, neglect of the creditor, or by convention between him and the debtor. For instance, Loeser & Co. paid the interest every six months; it might have been every year, or every two years, or at some longer period. If, now, a testator may direct that uncollected income to one person upon her death may be shifted to another, then the statute may be evaded. There cannot be a valid trust to pay one income accumulated in whatsoever way it happened when minorities are involved. So, if the testator meant to direct in effect that, if at Mrs. Gibb's death the trust fund had earned interest or income that was accrued, and the trustees had not reduced it to possession, it should follow the principal into the hands of the remaindermen, he violated the statute, because, as I have stated, there is an accumulation of income resulting merely from the fact that by agreement with the debtor the income was allowed to accumulate. It seems to me that the draftsman may have considered that intermediate the death and the payment some income would accrue, and have written the clause with reference to that. True, the will directs payment " upon [the] decease," but in practice payment is not coincident with such event.

I think that the decree of the Surrogate's Court of Nassau county should be modified as to such interest, and as so modified affirmed, without costs.

MILLS, J., concurred; RICH and BLACKMAR, JJ., concurred except on the question of interest, and as to that they voted to affirm; PUTNAM, J., concurred on the question of interest, and read for reversal on the question of the vesting of the principal.

PUTNAM, J. (dissenting):

The testamentary trustees held in trust $200,000 to pay the income to the stepmother, and upon her decease then to pay over the principal, without any words of direct bequest

or any prior interest in the income. This makes a gift postponed to the future, within the " divide and pay over " rule. This canon of construction is not limited to remaindermen unascertained. because described as a class, or to instances where the fund is not to go over till the beneficiary shall attain a certain age — although such are frequent illustrations of its application. While the stepmother lived, the *corpus* of this $200,000 vested in the trustees. Then, in the testator's words, they are, " upon her decease to pay over the principal of said Trust Fund, together with all interest and income earned and accrued and unpaid, to my brothers Henry Elmer Gibb and Lewis Mills Gibb, share and share alike, whereupon said Trust shall cease and determine." Clearly this was to take effect in future and not *in præsenti.* This was not on the testator's death, but on the termination of the trust. It is, therefore, contingent under *People's Trust Co.* v. *Flynn* (188 N. Y. 385, 394) — a case where the legatees in remainder were not a " class," and without conditions that they should attain a certain age, as in some cases distinguished in the prevailing opinion. Here was the chosen and accurate language of a lawyer familiar with our testamentary law. This will was drawn in 1910, less than three years after the decision in *People's Trust Co.* v. *Flynn* (*supra*) — a will contest of wide interest in Kings county. (44 Misc. Rep. 6; 106 App. Div. 78; 113 id. 683.)

Lord KENYON placed a different construction where the court has to gather the intention from informal words in a will, from where, as in the case before him, correct and technical expressions were used throughout. (*Denn* v. *Bagshaw,* 6 Durn. & East, 512, 516.)

The construction that this gift had not vested is supported by the contrasted bequest outright to these same brothers of the testator's bonds and stock in the firm of Mills & Gibb, which, in the form of exchanged securities, they took in their lifetime. A will is to be construed by the law at the testator's death. Nevertheless, Chief Justice PARKER said in 1717: " the construction of the will must be according to the import and meaning of the words at the time of making of the will." (*Goodright* v. *Wright,* 1 P. Wms. 396, 400.) It may not be wholly controlled by a prior decision that had influenced

its wording.   But where it appears to be the fact that a will is drawn under such a declared rule, then the stability of our law of testamentary construction, and the security of property rights, require that the constraint of some later, direct authority should guide us to depart from that rule, rather than to seek to gather a supposed purpose to give vested legacies equally to all the brothers of deceased.   The testator's legal intent does not require that the estates of these two remaindermen (so liberally treated) should be preferred to the testator's widow and children, to whom it would go in the residuary clause.

I, therefore, would modify the surrogate's decree, and direct that the trustees treat and dispose of this $200,000 as part of the residuary fund under clause 12 of the will.

Decree of the Surrogate's Court of Nassau county modified as to the interest that had accrued at the death of Sarah M. Gibb, which should be paid to her representatives; and as so modified affirmed, without costs.