Matter of the Judicial Settlement of the Account of FLORENCE NURSE FITHIAN, as Executrix of JOSIAH H. FITHIAN, Deceased.

(Surrogate's Court, Kings County, May, 1918.)

Trusts — executors and administrators — trustees — wills — accounting — evidence.

Where testator, who devised the residue of his estate in trust to collect the income from the personal estate with direction to apply the net income therefrom to testator's wife during her lifetime or widowhood and on her death or remarriage to pay, transfer and distribute the capital of the principal fund to certain named persons, authorized his executor to retain, and his trustee to accept as a part of the trust estate, any investments of which he died possessed, and testator died on a date which did not coincide with the interest date of any of such investments so retained and accepted, the interest payable after his death should be apportioned in such manner that so much

Misc.]    Surrogate's Court, Kings County, May, 1918.

thereof as was earned before his death should be regarded and accounted for as principal.

Where, though it appears by testimony worthy of all acceptation that decedent intended that the proceeds of a policy of insurance upon his life, in terms payable to his estate, should belong to his wife, the only suggestion of the delivery of the policy is that the wife was given a key of a safe deposit box in which the policy was, testator retaining a duplicate key, the court will refuse to give effect to the consent of the remaindermen that the wife may have such proceeds, an asset falling lawfully into the residue of the estate.

PROCEEDING upon the judicial settlement of the account of an executor.

Ira Bliss Stewart, for executrix.

Geller, Rolston & Horan, for the Farmers' Loan and Trust Company, trustee.

KETCHAM, S.   The will under which the executor accounts devised the residue of the estate to the Farmers' Loan and Trust Company in trust " to collect the income from the personal property at any time forming part of such trust estate and to apply the net income from such  *  *  *  personal estate to the use of " the testator's wife during her lifetime and widowhood and on her death or remarriage " to pay, transfer and distribute the capital of the principal fund to " persons nominated.   The testator authorized his executor to retain and his trustee to accept as a part of the trust estate any investment of which he died possessed.   Many such investments have been retained by the executor and are about to be accepted by the trustee, among which are bonds of corporations, a bond secured by mortgage and a note signed by an individual.   Upon all of these obligations interest was payable according to the instruments by which the

obligations were evidenced, at intervals of six months, and the decedent died on October 1, 1915, a date which did not coincide with the interest date of any of the obligations.

Question arises as to whether, as claimed by the executrix, the interest becoming' payable after the testator's death belonged to the wife as life tenant, or, as claimed by the trustee, such interest should be apportioned in such manner that so much thereof as was earned before the death should be regarded and accounted for as principal.

In the absence of any expression or intimation in the will to the contrary, the interest must be apportioned according to the contention of the trustee. It is believed that the rule on this subject known to have been applicable at common law to the indebtedness of individuals and private corporations has been in modern thought extended, as in reason it should be, to the obligations of *quasi* public corporations. Clear authority on this question is wanting.

In *Matter of Franklin,* 26 Misc. Rep. 110, it was held that a life tenant under a will was entitled to the interest on investments represented by securities accruing but not payable at the death of the testator, and that the same should not be apportioned between the life tenant and the remaindermen as of the death of the testator.

The opinion in the case cited placed the decision in part upon the fact that the interest which became payable after the death of the testator was specifically given to the life tenant by the will. No specific gift of any interest is shown in the will at bar or any gift, except of " income from the personal property at any time forming part of the trust estate."

Apportionment as of the date of the testator's death was made in *Account of Pierce,* 39 N. J. L. J.

254, but in that case nothing appears as to the nature of the investments, the interest of which was apportioned. It is probable that the court considered any income without regard to the nature of the investment as subject to such apportionment, but no such ruling is expressed, and it may well be that the securities therein involved were of the character as to which at common law apportionment was proper.

It is the practice throughout the state in the adjustment of the transfer tax to appraise as capital of which the decedent died possessed all interest earned at the time of the death though not yet payable. It was in accordance with this practice that the transfer tax was adjusted upon this estate. In the proceeding brought for that purpose, the executrix asserted and the court found as to all of the securities, which are the subject of the present controversy, that income earned at the death of the decedent, though not yet payable, was taxable as capital, which passed upon such death.

A ruling, which is authority in itself, derives some added sanction when it was contributed to by the acquiescence and indeed the assertion of the accountant, who now seeks a contrary result.

The accountant collected insurance upon the life of the deceased under a policy which by its terms was payable to his estate, and she now submits her demand for the proceeds of such policy on the claim that it was given to her by her husband.

Upon testimony worthy of all acceptation, it appears that the decedent intended that the proceeds of the policy should belong to his wife, yet there is no evidence of the delivery of the policy to her. The only suggestion of delivery is that she was given a key of a safe deposit box in which the policy was. The executrix testifies and, of course, the court believes that the key was given to her at the time when a letter signed

by her husband was given to her.   It is apparent from
the letter that it was intended as instructions to her
with respect to her conduct in the event of the testa-
tor's death, that in the safe with the policy were
securities to the value of $100,000, that there was no
intention on the part of the testator to make delivery
by token of the key of any of these securities, and
there is no intimation in the letter that the key was
intended by him as a symbol of the policy.

The husband retained a duplicate key to the safe
and thereby indicated that the delivery of the key was
not meant to vest in the wife any dominion over the
policy exclusive of his own.   There is no suggestion of
any circumstance which made delivery of the policy
itself difficult or inconvenient or which would lend
itself to the probability that the key was given in token
of a delivery of the policy itself.

The letter contains a complete recital of the dece-
dent's possessions, a careful estimate of the income
which would be available to the wife upon his death,
a statement of the effect of his will, including the fact
that his wife was named therein as executrix.   It then
proceeds, " You have one key of Safe 581, and a
duplicate, as also the key of my private drawer in
large safe of J. H. F. Co. will be found on my key
ring.   Should you require legal advice, I recommend
Ira Bliss Stewart, 346 Bway, N. Y. City," etc.   These
words, with their context, clearly indicate that the
delivery of the key was intended only to aid the execu-
trix in her conduct of the estate after the death of the
husband.

The consent of the remainderman that the proceeds
of the policy may be taken by the wife is an admirable
expression of a just and indeed generous impulse, and
it is with grief that the court must refuse to give effect
to it.   The residue of the estate is devised in trust, and

the remaindermen have no power to abort the trust as to any asset which lawfully falls within such residue.

There is no evidence of an effectual gift of the policy. The decree will conform to this opinion.

Decreed accordingly.