THE EQUITABLE TRUST COMPANY OF NEW YORK, Successor by Merger to the VAN NORDEN TRUST COMPANY, as Trustee under a Certain Deed of Trust Dated ˙March 11, 1907, between ATHOL MORTON MILLER and THE VAN NORDEN TRUST COMPANY, Respondent, *v.* ANNIE E. MILLER, Appellant, Impleaded with UNITED STATES TRUST COMPANY OF NEW YORK, as Executor, etc., of ANDREAS M. MILLER, Deceased, and Others, Defendants.

First Department, July 1, 1921.

**Trusts — trust to pay interest " as and when received " to beneficiary and on his death to third person — interest accrued but not matured on death of first beneficiary goes to his estate — construction that accrued interest payable to second beneficiary would make instrument void under provisions of Personal Property Law, § 16, against accumulations — construction rendering instrument valid rather than void preferred.**

Under a trust agreement placing certain municipal bonds in trust for the benefit of the father of the settlor during his life and upon his death for the benefit of the mother of the settlor, which directed the trustee to collect the interest and pay the same " as and when received " to the father of the settlor during his life, and on the death of the father to the mother, all interest, which had accrued on the death of the father, though not matured at that time, passes to the father's estate.

To construe the trust agreement to require the payment to the mother of interest accrued at the time of the death of the father, but not then matured, would make the trust instrument void, inasmuch as it would provide for an accumulation prohibited by section 16 of the Personal Property Law.

Since the provisions of the trust instrument are capable of two constructions, the court will adopt the construction which renders the trust legal and operative, rather than the one which will render it void.

LAUGHLIN, J., dissents, with opinion.

APPEAL by the defendant, Annie E. Miller, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 23d day of November, 1920, upon the decision of the court, rendered after a trial at the New York Special Term, directing that plaintiff pay to the United States Trust Company of New

York, as executor of the last will and testament of Andreas M. Miller, deceased, the sum of $7,871.54, out of the balance of income remaining in its hands as shown on its accounting and that plaintiff is entitled to reimburse itself as trustee for the amount of such payment out of any income subsequently accruing on said trust fund.

*Stephen O. Lockwood* of counsel [*Lockwood & Lockwood,* attorneys], for the appellant.

*Franklin P. Ferguson* of counsel [*Arthur A. Gammell* with him on the brief; *Murray, Prentice & Aldrich,* attorneys], for the respondent.

DOWLING, J.:

On or about the 11th day of March, 1907, Athol Morton Miller, then residing in the city of Duluth, State of Minnesota, made and entered into a certain agreement or deed of trust with the Van Norden Trust Company, a corporation duly organized and existing under the laws of the State of New York; having its office and principal place of business in the city and county of New York, whereby he transferred, assigned and set over unto the Van Norden Trust Company, its successors and assigns, certain personal property more particularly described in said deed of trust, to have and to hold the same for the uses and purposes expressed in said deed of trust, and to collect and receive the interest, income and profit of said trust fund, and to pay said interest, income and profit as and when received to Andreas M. Miller, father of said Athol Morton Miller, during his life, and upon his death, to Annie E. Miller, mother of said Athol Morton Miller, during her life, and upon the death of the survivor, to assign, transfer and pay over the principal of said trust to said Athol Morton Miller, if he was then living, and if he should not be living, then as otherwise provided and set forth in said agreement.

The Van Norden Trust Company duly accepted the trust and received securities and personal property comprising the principal of said trust fund of the face value of $408,000. It continued to perform the duties of trustee until September

25, 1910, when its name was duly changed by order of the Supreme Court, New York county, to the Madison Trust Company.

The Madison Trust Company continued to perform the duties of trustee under said deed of trust until June 1, 1911, when it was duly merged into the Equitable Trust Company of New York, under and pursuant to the Banking Law of the State of New York, and the Equitable Trust Company of New York has since continued to perform the duties of trustee under said deed of trust.

The bonds which constituted the principal of the fund under said agreement were given outright by Andreas M. Miller to his son, Athol Morton Miller, who transferred and delivered the same to the Van Norden Trust Company.

Subsequently Andreas M. Miller executed and delivered three certain voluntary trust agreements with the United States Trust Company of New York, one of securities of the par value of $700,000 for the benefit of his daughter, Maren Louise Miller Fellowes; the second of securities of the par value of $336,373.32 for the benefit of his son, Athol Morton Miller, or his issue; and the third of securities of the par value of $600,000 for his own benefit for life with remainder on his death to the city of Duluth, Minn., to establish a hospital and dispensary. The securities placed in trust under these agreements constituted the larger part of his possessions.

Said son and daughter were the only children of said Andreas M. Miller. Andreas M. Miller and his wife, Annie E. Miller, were, at the time of the execution of said agreement with the Van Norden Trust Company, living apart, he living in the city of New York and she in the city of Duluth, Minn.

The purpose of said Andreas M. Miller in the creation of those trusts was to dispose of the greater part of his property in such a manner as to provide for his children and to provide as well for the support of himself and his wife. At the time the deed of trust to the Van Norden Trust Company was made he declared that it was a trust practically for his wife; that he wanted the income reserved for himself while he lived, but that on his death he wanted everything to go to her that he personally did not get; that he wanted the income to go to himself during life because he thought it was safer;

but when he was through with it he wanted it to go to the people for whom it was intended.

The income of the said several trusts with the United States Trust Company of New York was payable to the beneficiaries therein named, and the income of the bonds transferred to the Van Norden Trust Company under said agreement was directed to be paid to Andreas M. Miller, as and when received, during his life, and to be paid to Annie E. Miller as and when received thereafter during her life, should she survive him.

The trust agreement made with the Van Norden Trust Company contains no power of sale or disposition and contains only the power to reinvest in the event of maturity and payment of the principal of the bonds passing to the trustee under said agreement; and then only to invest in securities of the same character and description, *i. e.*, municipal bonds of like character. All of the said bonds provided for payment of semi-annual interest payments, except one issue which provided for annual payments thereof.

During his lifetime Andreas M. Miller provided for the maintenance and support of his wife.

The trustee under the trust agreement dated March 11, 1907, held all the said bonds during the lifetime of Andreas M. Miller, except only $25,000 of the Kansas City Judgment four and one-halves which were paid off in July, 1915, and the proceeds invested in the purchase of Dayton, O., Water Works four and one-half per cent bonds bearing interest payable semi-annually, and managed the trust fund and received the income therefrom and paid over the same as and when received to Andreas M. Miller during his lifetime in accordance with the provisions of the deed of trust.

Andreas M. Miller died on May 22, 1917, leaving a last will and testament which was admitted to probate by the Surrogate's Court, county of New York, on the 25th day of July, 1917, and letters testamentary were issued thereon to the United States Trust Company of New York, which duly qualified and is now acting as such. By his will he gave to his daughter all of his property, which was of the value of about $70,000 exclusive of the amount claimed in this action.

Sometime prior to his death Andreas M. Miller wrote a

letter addressed to his wife and placed it in the hands of Hon. P. Henry Dugro with instructions to deliver it to his wife after his death.    The letter is as follows:

" DEAR ANNIE.— This is intended to reach you after my demise and it will then be proper for you to advise the Equitable Trust Company, No. 37 Wall St., New York City, to thereafter remit the interest and income ' account the Miller Trust of March 11, 1907,' as and when collected, to your address.
" Yours,<br>" A. M. MILLER."

This letter was delivered to Annie E. Miller after her husband's death.

On June fourth Mrs. Miller wrote the plaintiff from Duluth requesting compliance on its part with the provisions of the trust agreement and on June eighth Mr. Babcock, trust officer of the plaintiff, wrote her inclosing a check for $534.60, " being net income due you as beneficiary of the trust," excusing the delay in sending the same as caused by a misunderstanding on the part of its bookkeeper, and adding, " We will, in the future, make the payment of the income to you as collected."

On July seventh Mrs. Miller telegraphed the plaintiff, " Why is money not sent? " and on the ninth of the same month Mr. Snyder, assistant secretary of plaintiff, wrote her acknowledging the receipt of the telegram and informing her that the income due her had been forwarded to her on July sixth.

The remittance made on July sixth amounted to $8,959.50, and, together with the previous remittance of $534.60, made up the total amount of income received for the six months, January to July, after the deduction of the trustee's stipulated compensation.    Five hundred and forty dollars of the income for the period was received June first and the remaining $9,050 July first.    No part thereof matured during the lifetime of Andreas M. Miller.

Subsequent to these two payments, made in compliance with the literal provisions of the trust agreement, and under date of July twenty-seventh, the United States Trust Company, as executor of the will of Andreas M. Miller, wrote

First Department, July, 1921.          [Vol. 197

the plaintiff asking information as to the amount of income which accrued on the trust prior to Mr. Miller's death, and on the following day the plaintiff wrote Mrs. Miller: "We are now advised by counsel that the interest on the various securities held under the deed of trust from the date of the last collection of interest to the date of Mr. Miller's death, viz: May 22, 1917, is rightfully due and payable to the Executors," etc., adding that on June 7, 1917, they paid her $534.60 and on July 6, 1917, $8,959.50, or a total of $9,494.10, of which amount $7,826.42 was due the executors of the estate of her husband and requested her to forward to them her check for that amount.

Thereafter on November 15, 1917, the plaintiff brought this action for an accounting setting forth the payments made to Andreas M. Miller in his lifetime, and to his widow after his death, and praying judgment that the accounts be taken, passed upon and judicially settled, and the plaintiff directed to hold the principal of said trust as formerly, and pay the income to the life beneficiary.

The defendant, Annie E. Miller, answered admitting all the allegations of the complaint and joined in the prayer of the plaintiff for judgment.

Of the income received subsequent to July, 1917, the plaintiff as shown by its second amended and supplemental complaint, omitted to pay to Mrs. Miller the sum of $8,903.75, and in its said complaint alleges that both Annie E. Miller and the United States Trust Company "claim that the income accrued on said trust fund to May 22, 1917, but not received until after that date should be paid to him."

The defendant, Mrs. Miller, denied that allegation, and alleged that this income had been paid to her by the plaintiff as provided in the trust agreement, and that there was no income which accrued on said trust fund to May 22, 1917, in the hands of the plaintiff and alleged that she was entitled under the terms of the trust agreement to the income paid her in June and July, 1917, and that plaintiff has refused to pay to her income received by it since July, 1917, which should have been paid over to her as and when received.

The learned court at Special Term found that the payments of June 7 and July 6, 1917, were voluntarily made by plaintiff

to Annie E. Miller, with full knowledge of the facts, as and in compliance with its obligation set forth in the trust agreement; and further that the plaintiff has withheld from the defendant the interest and income down to January 1, 1918, amounting to $7,316.10, and out of the interest and income down to July 1, 1918, the sum of $515.52, together making up the sum of $7,826.42, being the amount claimed by the United States Trust Company of New York, as executor of Andreas M. Miller, and claims the right to withhold from said Annie E. Miller, from interest and income accruing and received subsequent to July, 1917, an amount equal to the amount of the accrued income down to the date of the death of Andreas M. Miller, and out of subsequent accruing income was retained the further sum of $1,077.33, making in all the sum of $8,903.75.

The court held, as conclusions of law:

" I. That the Equitable Trust Company of New York, the plaintiff herein, as trustee under said deed of trust, in good faith and believing that she was entitled thereto, paid over to the defendant Annie E. Miller the sum of Seven thousand eight hundred seventy-one 54/100 dollars ($7,871.54) as appears in Schedule C-2 of the account filed herein, said payment being the amount of interest and income accrued on said trust fund to May 22, 1917, less the amount of trustee's commissions thereon.

" II. That the United States Trust Company of New York, as executor of the last will and testament of Andreas M. Miller, deceased, was and is entitled to receive said sum of Seven thousand eight hundred seventy-one 54/100 dollars ($7,871.54) being the amount of interest and income accrued on said trust fund to May 23, 1917, less the amount of the trustee's commissions thereon, with interest from July 6, 1917.

" III. That the defendant Annie E. Miller was not entitled to receive said sum of Seven thousand eight hundred seventy-one 54/100 dollars ($7,871.54).

" IV. That the plaintiff herein, The Equitable Trust Company of New York, as trustee, is entitled to reimburse itself as trustee for the amount of said payment due to the United States Trust Company of New York, as executor of the last will and testament of Andreas M. Miller, deceased, in the

sum of Seven thousand eight hundred seventy-one 54/100 dollars ($7,871.54) out of any income subsequently accruing on said trust fund and payable to the defendant Annie E. Miller.

" V. That the plaintiff, The Equitable Trust Company of New York, as trustee, should, out of the balance of income remaining in its hands as shown by said account, pay to the United States Trust Company of New York, as executor of the last will and testament of Andreas M. Miller, deceased, the sum of Seven thousand eight hundred seventy-one 54/100 dollars ($7,871.54) and should pay the balance of said income to Annie E. Miller, the present life beneficiary of said trust fund."

" VIII. That the defendant Annie E. Miller is entitled to receive only the income accruing on said trust fund and received by the plaintiff from and after May 22, 1917, the date of death of said Andreas M. Miller, excepting, however, such amounts thereof as may be necessary to reimburse the plaintiff for any payment made to the United States Trust Company of New York as executor as aforesaid."

The aggregate amount paid over to Annie E. Miller on June 7 and July 6, 1917, amounted to $9,494.10, representing six months interest, amounting to $540, paid June first on Dayton Water Works bonds and six months interest, amounting to $9,050, on other municipal bonds, less the trustee's commission of one per cent.

The question is whether $7,871.54 (or so much of said $9,494.10 as represents interest accrued to May 22, 1917, the date of the death of Andreas M. Miller) is payable under the terms of the trust to the estate of Andreas M. Miller, or whether it was properly paid to Annie E. Miller, as succeeding beneficiary for life.

The respondent contends that the directions to the trustee are only capable of three possible constructions:

A. A direction that the interest be apportioned between the two life tenants according to the usual rule of law.

B. A direction ambiguous as to whether the testator intended that the entire interest maturing after the death of the first life tenant should be paid by the trustee to the second life tenant.

C. An unambiguous direction amounting to an express stipulation that the entire interest maturing after the death of the first life tenant should be paid by the trustee to the second life tenant.

It further contends that on principle and on authority the estate of the first life tenant is clearly entitled to the interest accrued at the time of his death under any one of the three possible constructions.

The appellant contends that the whole scheme of Andreas M. Miller, and the circumstances surrounding its execution and mode of operation, show that his dominant purpose was to divide his property into four parts, intended to provide a continuous income measured to the respective needs, present and future, of himself and each member of his family having claims upon his bounty, or entitled to proper provision for support and maintenance and that each should have and enjoy the income of the allotted share continuously from the time of division by creation of the trusts. This scheme and purpose, it is urged, preclude the idea of intention that there should be an accumulation of income under either of the trust agreements, and, if carried out according to his declared intention, no accumulation under either thereof was possible. Therefore, it follows that the interest collected during Mr. Miller's life was to be paid to him; that received after his death was, as and when received, to be paid to Mrs. Miller.

Taking up first a possible construction of the trust agreement that it directs that the entire interest maturing after the death of the first life tenant should be paid by the trustee to the second life tenant, this would amount to an accumulation prohibited by the statute of this State (Pers. Prop. Law, § 16, as amd. by Laws of 1915, chap. 670). In *United States Trust Co.* v. *Tobias* (21 Abb. N. C. 392) it was held that income derived from personal property should be apportioned as of the date of the death of the life tenant and that her executors were entitled to such portion as accrued up to that time, citing with approval Perry on Trusts (Vol. 2 [2d ed.], p. 102), where it was laid down that "interest money upon notes, bonds, mortgages and similar securities accrues from day to day, although it is not payable until a fixed day. It is, therefore, apportionable and trustees must pay the proportion accruing

during the life of the tenant for life to his representatives."
In *Matter of Lamb* (182 App. Div. 180; affd., without opinion,
224 N. Y. 577) it was held that an express direction to the
trustee to pay the principal " together with all interest and
income earned and accrued and unpaid " upon the death of
the life tenant to the remaindermen was an attempted direction
to accumulate and was void.   The language of the direction
to the trustee in that case was to " collect and receive the
interest and income   *   *   *   and pay over the same in semi-
annual instalments, to   *   *   *   Sarah   *   *   *   for and during
her natural life, and upon her decease to pay over the principal
of said Trust Fund, together with all interest and income
earned and accrued and unpaid, to my brothers Henry Elmer
Gibb and Lewis Mills Gibb, share and share alike, whereupon
said Trust shall cease and determine."   Mrs. Sarah M. Gibb
died December 27, 1916.

It was found that the trust fund had been loaned on interest,
payable semi-annually, to a firm, as authorized by the testator,
and that interest amounting to $4,846.15 was due and payable
to the trustees January 31, 1917 (said date being the next date
of the maturity of the semi-annual interest payments following
the death of the life tenant).

The court held that so much of the $4,846.15 as had accrued
at the date of the death of the life tenant should be paid to
her estate, irrespective of the express direction to the contrary.
The Appellate Division stated the question as to the statute
against accumulations as follows (at p. 188): " The will
directs that the trustees shall pay the principal ' together with
all interest and income earned and accrued and unpaid ' to
testator's brothers.   Does that direct an accumulation?   The
loan to the Loeser Company was on an arrangement, as shown
by the practice, that the interest should be paid at the end
of each six months.   Even if interest is deemed to accrue
from day to day, it is not collectible daily.   The trustees
could not have collected it before Mrs. Gibb died.   But that
is not the test.   The interest was an incident of the principal
and had no unrelated and independent status.   Each unit of
principal grows through continuing time and is owned by
the person who owns the principal.   Who owned the principal
while it was so increasing?   The trustees did.   But their title

was only to support the trust to pay to Mrs. Gibb. How could they take title to pay her and yet pay to somebody else? It is answered that they could do so because the will so directs. If so, the will gives the trustees title to the principal, among other things, for the purpose of earning money thereon during a precedent estate, to pay to the remaindermen. Now, the learned counsel for the respondent, with his usual helpful, fair presentation, says that such thing could not be done if the trustees had received the money, and that the case would then fall within *Matter of Keogh* (112 App. Div. 414). But in principle is there a distinction? The trustee has title to the interest because he has title to the principal, and his tenure is not affected because it had not been paid into his hand, or because, according to the terms of the loan, the sum is not yet collectible. The statute is not that the takers of an estate shall not accumulate by hoarding in their hands, but the law forbids accumulations, however effected, except in case of minorities. Income may accumulate by the connivance, neglect of the creditor or by convention between him and the debtor. For instance, Loeser & Co. paid the interest every six months; it might have been every year, or every two years, or at some longer period. If, now, a testator may direct that uncollected income to one person upon her death may be shifted to another, then the statute may be evaded. There cannot be a valid trust to pay one income accumulated in whatsoever way it happened when minorities are involved. So, if the testator meant to direct in effect that, if at Mrs. Gibb's death the trust fund had earned interest or income that was accrued, and the trustees had not reduced it to possession, it should follow the principal into the hands of the remaindermen, he violated the statute, because, as I have stated, there is an accumulation of income resulting merely from the fact that by agreement with the debtor the income was allowed to accumulate."

Taking up the second possible construction of the trust agreement, that the direction is ambiguous as to whether the testator intended that the entire interest maturing after the death of the first life tenant should be paid by the trustee to the second life tenant, it is well settled that where the

provisions of an instrument are capable of two constructions, the court will adopt that which will render the trust legal and operative, rather than one which will render it void. (*Arthur* v. *Arthur*, 3 App. Div. 375.) This brings us, therefore, to the first construction suggested, viz., that the direction to the trustee is, in intent and effect, one that the interest be apportioned between the two life tenants according to the usual rule of law. The respondent contends that this is the only logical construction of the words used; that a trustee can only pay over income when received or at periodic intervals, and that the effect of specifying that payments shall be made " when received " is that payment shall be made as soon as possible; that under the usual New York rule applicable to such interest payments, the estate of the life tenant is entitled to income accrued at the time of his death, and there is no reason to assume that a direction to pay income to the life tenant as soon as possible shows an intention that the estate of the life tenant shall be deprived of income accrued at the time of his death. The quotation heretofore made from the case of *United States Trust Co.* v. *Tobias* (21 Abb. N. C. 392) shows that it was there held that a direction to pay income to the life tenant for and during the natural life entitled her estate to income accrued at the time of her death on personal property, including municipal bonds as in the present case. In *Matter of Fithian* (103 Misc. Rep. 568) it was said (at p. 570): " In the absence of any expression or intimation in the will to the contrary, the interest must be apportioned according to the contention of the trustee. It is believed that the rule on this subject known to have been applicable at common law to the indebtedness of individuals and private corporations has been in modern thought extended, as in reason it should be, to the obligations of *quasi* public corporations. Clear authority on this question is wanting."

Section 2674 of the Code of Civil Procedure provides: " All rents reserved on any lease made after June seventh, eighteen hundred and seventy-five, and all annuities, dividends and other payments of every description made payable or becoming due at fixed periods under any instrument executed after such date, or, being a last will and testament that takes effect after such date, shall be apportioned so that on the death of any person

interested in such rents, annuities, dividends or other such payments, or in the estate or fund from or in respect to which the same issues or is derived, or on the determination by any other means of the interest of any such person, he, or his executors, administrators or assigns, shall be entitled to a proportion of such rents, annuities, dividends and other payments, according to the time which shall have elapsed from the commencement or last period of payment thereof, as the case may be, including the day of the death of such person, or of the determination of his or her interest, after making allowance and deductions on account of charges on such rents, annuities, dividends and other payments. * * * This section shall not apply to any case in which it shall be expressly stipulated that no apportionment be made, or to any sums made payable in policies of insurance of any description."

This section was under consideration in *Matter of Young* (23 Misc. Rep. 223). There the will of Thomas Cornell contained a direction " to pay over unto my said beloved wife Catharine Ann for her own sole use, benefit and disposition, during the period of said ' two lives ' if she shall live so long, or if not, during her natural life, ninety (90%) per cent of the net income of my said estate in lieu of dower or of any rights she may have in any or to any part of my estate except as herein provided, the remaining ten (10%) per cent to revert to my estate." Mrs. Catharine Ann Cornell died May 15, 1897. In an accounting by the trustees, one of the questions involved was whether the estate of Catharine was entitled to interest earned but not due or collected by the trustee at the time of the death. The court quoted section 2720 of the Code (now section 2674) in its entirety and concluded that the earned income belonged to the estate of the life tenant, and gave the following direction (p. 227): " Then compute the amount of income (not including any dividends on stocks owned by the estate) which was earned, but not collected by the trustee on May 15, 1897, less 10 per cent thereof. Deduct from that such proportion for the expenses of the estate for the ten months less two-twelfths of taxes paid, as this income bears to the remaining income for the ten months, less 10 per cent thereof, and the remainder thus found will be the

income due Mrs. Cornell's estate, and shall be at once paid to Nellie L. Carpenter, executrix of Catharine Ann Cornell's will, in full for her interest in the estate of Thomas Cornell."

The court in discussing the effect of the Code section said (p. 228): "There seems to be no reported case construing section 2720 of the Code of Civil Procedure in which the facts are similar to the one at bar. I have given the subject careful examination, and the conclusions here arrived at are in accordance with the plain reading of the section. Some of its provisions are opposed to the principles of the common law. (2 Perry on Trusts, § 556; *Clapp* v. *Astor*, 2 Edwards Ch. 379; *Kearney* v. *Cruikshank*, 117 N. Y. 95.) It seems framed to fully meet a case similar to the one before me. Its provisions are clear, and I have construed it accordingly. Some of the income of this estate is also apportionable under the provisions of the common law, aside from section 2720, such as interest on bonds and mortgages, and other securities. (*U. S. Trust Co.* v. *Tobias*, 21 Abb. N. C. 393.)"

I am of the opinion that the learned court was right in holding that, in the absence of any express stipulation to the contrary, the estate of the life tenant of a trust to pay income is entitled to interest on municipal bonds, accrued but not yet payable, at the time of the life tenant's death. I conclude that the judgment should, therefore, be affirmed, with costs to all parties appearing on this appeal, payable out of the trust estate.

CLARKE, P. J., MERRELL and GREENBAUM, JJ., concur; LAUGHLIN, J., dissents.

LAUGHLIN, J. (dissenting):

By the trust agreement the settlor of the trust assigned and transferred to the trustee specified bonds of the aggregate par value of $408,000, upon all but one class of which interest at specified rates became due and payable semi-annually on January first and July first and upon one class of which, aggregating $70,000, interest became due and payable annually on the first of July. In the trust agreement immediately following the enumeration of the bonds the trustee was directed to collect the interest and to pay the same " as and when

received " to the father of the settlor during his life and upon his death to the mother of the settlor, if surviving, during her life. The father of the settlor died on the 22d of May, 1917, and the mother of the settlor survived him. The point presented for decision is whether there must be an apportionment between the mother of the settlor and the personal representative of the father of the interest which accrued on these bonds between the 1st day of January and the 1st day of July, 1917, or whether the construction of the trust agreement recognized and acted upon by the trustee in the first instance, to the effect that the mother of the settlor is entitled to all of such interest, was the proper construction. I am unable to agree with the views expressed by Mr. Justice DOWLING that the construction so heretofore given and acted upon by the trustee would be in violation of section 16 of the Personal Property Law (as amd. by Laws of 1915, chap. 670) and void as constituting an accumulation of income forbidden by subdivision 3 of said section. Technically speaking it is true, as stated in *United States Trust Co.* v. *Tobias* (21 Abb. N. C. 392) and *Matter of Lamb* (182 App. Div. 180), that income from personal property accumulates from day to day, and, therefore, in the absence of a direction to the contrary in a will, deed or other instrument creating a trust, there should be an apportionment of such income as of the date of the death of the life beneficiary thereof. I do not understand, however, that either the statute or the general rule to which reference has been made precludes the settlor of a trust from giving to one life beneficiary under circumstances such as are here presented the interest that falls due and becomes payable on specified securities during the life of such beneficiary, and to another the interest falling due and becoming payable thereon after the death of the first beneficiary, even though it represents income accruing in part but not becoming due or payable during the life of the former beneficiary. There is in such case no direction for the unlawful accumulation of income. I know of no decision in which it has been held that there can be a direction for the accumulation of income in violation of the statute before the income has become due and payable. If there were any doubt on that point I think it has been removed by the Legislature itself by recog-

First Department, July, 1921.          [Vol. 197

nizing in section 2674 of the Code of Civil Procedure, in effect that the person creating a trust may provide that there shall be no apportionment in such cases. The section after prescribing the general rule for apportionment, which would be applicable were it not for the provisions of the deed of trust by which the settlor only gave the first life beneficiary the interest falling due and payable during the life of such beneficiary, expressly provides that the provisions of the section "shall not apply to any case in which it shall be expressly stipulated that no apportionment be made, or to any sums made payable in policies of insurance of any description." It is not necessary to bring the case within the exception prescribed in that section that the precise phraseology of the section should be followed; it is sufficient, I think, if it plainly appears that the settlor or testator intended that there should not be any apportionment; and in the case at bar such intent is manifest, for the corpus of the trust consisted of municipal bonds, the interest upon which he expected would be promptly paid, and for that reason no significance is to be attached to the direction that the beneficiary was to have the interest when received by the trustee, because in the circumstances he recognized no interval between the date the interest became due and the time it would be paid to the trustee. He was not providing for the estate of the life beneficiary. His only concern was for the life beneficiary, and on that theory he gave the first beneficiary only the interest falling due and payable during his life. I, therefore, vote for reversal.

Judgment affirmed, with costs to all parties appearing on this appeal payable out of the trust estate.