In the Matter of the Estate of SANFORD WOLFE, Deceased.

Surrogate's Court, New York County, March 4, 1935.

*Griffiths & Content* [*Jacob Schild* of counsel], for the executors.

*Louis J. Elias*, for the life beneficiary.

*John L. Buckley*, special guardian.

DELEHANTY, S.  Deceased died November 14, 1932, owning preferred and common shares in a distillery corporation of Virginia. On August 11, 1932 — about three months before deceased died — the following resolutions were adopted by the directors of the corporation in question:

"*Resolved*. That there be and hereby is declared subject to the terms and conditions hereinafter stated on the common stock of this Company to common stockholders of record at the close of business on the record dates as hereinafter defined and fixed and payable on the dividend date as hereinafter defined and fixed, a dividend in warehouse receipts of one case of whiskey containing 24 pint bottles for each five shares of common stock, such whiskey at the time of bottling to have been aged at least fifteen years in the wood, upon terms and conditions to be set forth in such warehouse receipts; and further

"*Resolved*. That there be and hereby is declared on the preferred stock of this Company, to preferred stockholders of record at the close of business on the date which shall be the record date for the determination of the rights of common stockholders to receive the dividend in warehouse receipts declared by the preceding paragraph of this resolution and payable when and on the dividend date on which such dividend in warehouse receipts to common stockholders shall be paid an extra cash dividend of 50c a share; and further

"*Resolved*. That the record date for the payment of such dividend in kind on the common stock be and it hereby is defined and fixed as and at September 15, 1934, or at such earlier date as may be hereafter fixed by the Board of Directors of this Company and that the dividend date for the payment of such dividend in kind to the common stockholders be and hereby is defined and fixed as and at October 1, 1934, or at such earlier date as may be hereinafter fixed by the Board of Directors of this Company. In the event, however, of such earlier record and dividend date being hereafter fixed such dividend date is to be not less than ninety days subsequent to the adoption of any resolution fixing such earlier dividend date and such record date shall be not more than fifteen days before the dividend date so fixed; and further

"*Resolved*. That it is the intention of the Company and of this Board of Directors in the declaration of the foregoing dividends that such dividends irrevocably belong to stockholders of record at the close of business on September 15, 1934, or on such earlier record date as may hereafter be fixed by the Board of Directors; that this Corporation by action of its Board in this connection has divested this Corporation of all title to the warehouse receipts necessary to carry distribution of such dividend in kind into effect and has created a debt to its stockholders as of the close of business on the record date as now or hereafter fixed as to such cash dividend, and it is hereby directed that all necessary entries on the books of this Company be made accordingly so as to separate such dividends from the corporate assets of the Company."

Subsequently and on July 12, 1933, the board of directors of the corporation adopted the following resolution:

" *Resolved.* That pursuant to the provisions of resolutions adopted by this Board at a meeting held on August 11, 1932, declaring on the common stock of this company a dividend in warehouse receipts of one case of whiskey containing 24 pint bottles for each five shares of common stock; the Board of Directors hereby changes the rcord date for the determination of stockholders entitled to receive such dividend from the close of business on September 15, 1934, to the close of business on October 2, 1933, and fixes the close of business on October 2, 1933, as such record date, and hereby changes the date for the payment of such dividend from October 1, 1934, to October 16, 1933, and fixes October 16, 1933, as the date for the payment of such dividend."

The account lists 1,208 preferred shares and 976 common shares as the property received by the executors. The account shows an exchange of all the preferred shares for a somewhat larger number of common shares. This exchange was made on July 5, 1933. Prior to July 5, 1933, the executors had sold all but 200 shares of the common shares originally received from the deceased. After July fifth, additional common shares were sold until the executors had left on hand only 814 common shares. The account does not specify whether in the shares sold after July 5, 1933, there were included the remaining 200 common shares originally received. Nothing in the account indicates that there was any difference between the shares originally received from the deceased and the common shares thereafter received by the executors in the exchange. It should be noted that the beneficiary of income is one of the executors and that she has made no claim in respect of the proceeds of the common shares sold whether before or after the exchange. Her account shows that all of the proceeds of these shares were put by the executors into the capital of the estate.

The executors received a dividend of the description set forth in the quoted resolutions upon the 814 common shares which they continued to hold after the date for payment prescribed in the resolutions. The sole question is in respect of this dividend upon these shares.

There is no reason why a corporation may not declare an ordinary dividend in other than cash. (*City Bank Farmers Trust Co.* v. *Ernst,* 263 N. Y. 342.) Though this dividend is declared in a commodity or the evidences of title to a commodity, it must be treated as if it were a cash dividend. The rule in New York is succinctly stated in *Matter of Kernochan* (104 N. Y. 618, 624). The court there said: " As soon as the profits on shares of stock are ascertained and

declared, they cease to be the property of the company, and the owner of the shares becomes entitled to the dividend. It at once forms part of his estate. The fact that they are made payable at a future time is immaterial. The dividend to which the life tenant may be entitled as income, can only be that which the company declares after that relation is acquired. In this case the dividend represented profits, or income, but had become a debt before the will took effect."

The subject was considered in *Ford* v. *Snook* (205 App. Div. 194, 196). The rule was there restated as follows:

" The provision in a resolution declaring a dividend, relative to its being payable to stockholders of record on a certain day is intended to serve the convenience of the corporation and to protect it in paying to the persons who appear on its books, where it has no notice of transfer. It does not affect title to the dividend. (*Brisbane* v. *D., L. & W. R. R. Co.*, 94 N. Y. 204; 14 C. J. 754, 819.)

" The declaration of a dividend creates no contractual relation between the corporation and the stockholder. Rather it creates a debt in favor of the latter against the corporation. (*Ehle* v. *Chittenango Bank*, 24 N. Y. 548; *Searles* v. *Gebbie*, 115 App. Div. 778, 780; affd., 190 N. Y. 533; *Cogswell* v. *Second National Bank*, 78 Conn. 75; affd., *sub nom. Jerome* v. *Cogswell*, 204 U. S. 1.)

" When a dividend has been declared out of the earnings of a corporation, such dividend becomes the property of the owners of the shares of stock, no matter whether payable immediately or at a future time. (*Brundage* v. *Brundage*, 60 N. Y. 544; *Matter of Kernochan*, 104 id. 618; *Hopper* v. *Sage*, 112 id. 530; *Robertson* v. *DeBrulatour*, 188 id. 301; *Rowe* v. *White*, 112 App. Div. 688; affd., 189 N. Y. 523; *Hill* v. *Newichawanick Co.*, 8 Hun, 459; affd., 71 N. Y. 593; *Warner* v. *Watson & Gibson*, 4 Misc. Rep. 12.) Before a dividend is declared, the intangible right of the stockholder to share in the earnings of the corporation is a mere incident to the stock and passes with it on a sale. But when a dividend is declared it constitutes a property interest separate from the stock and forms no part of it, and on a sale does not pass as an incident to it. (*Wheeler* v. *Northwestern Sleigh Co.*, 39 Fed. Rep. 347.) "

Analysis of the quoted resolutions discloses that dividends were declared simultaneously upon preferred and common shares. The immediacy of the declaration and the consequent vesting in the deceased as stockholder of the dividend is evident from the text of the resolution. They say that the dividend " hereby *is* declared " both in speaking of the commodity dividend on the common and the cash dividend on the preferred. They next fix " the record date for

the *payment* of such dividend." They then declare the intention of the board " that such dividends irrevocably belong " to stockholders at the record date. Next follows the most specific and significant declaration of the board which declares " that this corporation by action of its board in this connection *has* divested this corporation of all title to the warehouse receipts necessary to carry distribution of such dividend in kind into effect and *has* created a debt to its stockholders " on the record date. The original resolution then concludes by saying that " it is hereby *directed* that all necessary entries on the books of this company be made accordingly *so as to separate such dividends from the corporate assets* of the company."

A debt was created by these resolutions payable in warehouse receipts to stockholders at the record date. The resolutions speak as of the date of their adoption. They direct the making of entries which set apart this property from the general assets of the corporation. No claim is made that the entries were not then and there made. The debt was payable as is the usual case to stockholders of record at a fixed date. There is no difference between these resolutions and those customarily adopted by corporations except the single one of the long interval between the date of declaration and the date of payment. That difference in time does not alter the essential quality of the dividend declaration.

The court cannot enter into the question of business judgment of these directors in originally deferring the payment of dividends for two years. The directors were dealing with a commodity which at the time of its declaration had a very narrow legal market. They may have assumed the repeal of the prohibition amendment at some future date. They may have fixed the record date because of a belief that only at that date or at some other date after the date of declaration would the stockholders be able to avail themselves in any practical way of the property described in the resolutions.

The only substantial question is whether the resolutions effectively separate the corporate assets so that from the date of declaration they became payable in all events to the stockholders. The court is satisfied that the separation of assets was effectuated. There was then attached to the stock the right to receive this specific dividend. The stockholders of record might change in this long interval. It was reasonable that for the convenience of the corporation the record date for payment rather than the date of declaration should be used to determine the actual individuals who would receive the dividend. These items related only to payment. The regulations are spoken of as regulations of *payment*. The debt to be so paid had been created at the time the resolutions were adopted.

At least 614 of the 814 shares producing this dividend were received in exchange for preferred. As stated, the record does not show whether or not the whole 814 shares are exchange shares. It cannot be doubted that the preferred shares constituted capital of this estate. It must follow that everything which was obtained in exchange for the preferred shares likewise constitutes capital. In applying the rule in *Matter of Osborne* (209 N. Y. 450) the courts have protected the capital of an estate or trust by turning into such capital every element entering into capital value and all natural increase in its value. (*Pratt* v. *Ladd,* 253 N. Y. 213; *Matter of Hagen,* 262 id. 301; *Baker* v. *Thompson,* 181 App. Div. 469; affd., 224 N. Y. 592.) The record does not show the terms of the preferred shares and since no point is made by any party concerning the right to make the exchange the court indulges the assumption that the exchange was made pursuant to a right attached to the preferred shares at the time of deceased's death.

At the time of the exchange there were acquired by the executors as the equivalent of their preferred shares a certain number of common shares which carried rights to specific dividends. Perhaps these rights to dividends were not the precise equivalent of " rights " as customarily spoken of in the stock market, *i. e.,* rights to subscribe for additional shares, etc. But this body of shares then had attached this specific right to a particularized and definitely fixed dividend. It must follow that the common shares then acquired and the theretofore declared dividend thereon constituted a substitute for the capital asset, *i. e.,* the preferred shares. As was said in *Matter of Hagen* (*supra*), it was " just as if the trustees had sold the preferred and bought a larger number of the new issue — the increased value would go to principal, or amount to an increase in the value of the trust holdings." The court there says further: " The rule to be applied to such a situation was * * * that ' income ' does not include ascertainable increase in the value of capital, nor profits on sale of corporate stock out of the corpus of the trust, nor value accruing to such stock by reason of subscription rights attaching to, or awarded it, or the proceeds of the sale of such rights." The dividend right so acquired by the exchange had no relation to corporate operations at the time of or subsequent to the exchange nor to corporate operations subsequent to the death of testator. In essence it was an appropriation to the stockholders of assets of the corporation existing at the time of the dividend declaration. These assets were the result of operations antecedent the date of declaration and hence long antecedent the date of exchange. The dividend right was attached to the common shares when received in exchange. It follows that the dividend attribu-

table to at least 614 shares in the hands of the executors which assuredly had their origin in the exchange transactions should be turned into the capital of the estate.

Should any different principle apply to the dividend on the other 200 shares which may or may not be part of deceased's own holdings?  It is not possible in logic to differentiate the quality attached to the dividend on the one group of shares from the quality of the dividend attached to the other.  Between the date of declaration in 1932 and the date of exchange in 1933, no corporate action had been taken in relation to the dividend.  The status at the time of the exchange was a status which could be said to exist on every day antecedent the exchange and back to the day of declaration. That status existed at the date of death of deceased.  If then at the date of death of deceased there was a status attached to this dividend declaration which made it, within the meaning of the cases cited, a capital item in his estate, it still was part of that capital when paid long after his death.

The special guardian argues that the unusual features of this dividend classify it as an extraordinary dividend requiring investigation of capital values under *Matter of Osborne (supra)*.  With this argument the court does not agree though it has approved that portion of the special guardian's position which is predicated on the text of the resolutions.  No apportionment is here required. The one category into which this dividend cannot be fitted is the category of dividends declared in regular course from corporate operations after the death of deceased.  It was neither earned nor declared in that period.  The fact that payment was made after death does not suffice in itself to entitle the life beneficiary to it.

Notice should be taken of the resolution of July 12, 1933.  This merely changed the date of payment and was in exact conformity with the tenor of the 1932 resolutions which expressly reserved the right to change such date.  It is to be noted that the resolution of 1932 fixed an ultimate date and reserved only the right to fix an earlier one.  This is all that the 1933 resolution purported to do. It cannot be said to be a new declaration of the dividend.

Argument is made that section 3797 of the Code of Virginia controls the decision here.  The corporation was organized in that State and the powers of its board of directors are limited by the laws of that State.  The section cited regulates only the closing of the transfer books or, in lieu of such closing, the fixing of a record date for ascertainment of actual identity of stockholders entitled to payment.  The section does not forbid an earlier declaration of a dividend nor regulate at all the date of declaration.

Argument is made that section 17-b of the Personal Property Law requires a holding that the dividends belong to the income beneficiary. That section applies only to "income earned during the period of administration." Since the court has held that the dividends are not income of the estate at all the section is not applicable.

Notice should be taken of authorities in other States cited in support of the claim of the life beneficiary (*Nutter* v. *Andrews*, 246 Mass. 224; 140 N. E. 744; *Richter & Co.* v. *Light*, 97 Conn. 364; 116 N. E. 600; *Ford* v. *Ford Manufacturing Co.*, 222 Ill. App. 76). Some are in States having a different rule than New York governing corporate dividends. It need not be doubted that a dividend declaration might lawfully prescribe a future separation of corporate assets and a future creation of a right of stockholders therein. The subject is discussed in 38 Harvard Law Review, 245. Here the creation of the right in the stockholder body is *in præsenti*. Payment only is *in futuro*. The cases referred to are not applicable.

All the dividends in controversy are part of the capital of the estate and the account will be settled on this basis. Submit, on notice, decree accordingly.