**HELVERING, Commissioner of Internal Revenue v. McGLUE'S ESTATE.**

No. 4752.

Circuit Court of Appeals, Fourth Circuit.

April 10, 1941.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

William L. Cary, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for petitioner.

Ralph Page Wanlass, of Washington, D. C. (Walter G. Moyle, of Washington, D.C., on the brief), for respondent.

DOBIE, Circuit Judge.

This is a petition for a review of the decision of the United States Board of Tax Appeals (hereinafter called the Board) in the case of Estate of G. Percy McGlue v. Commissioner, 1940, 41 B.T.A. 1186.

The Commissioner of Internal Revenue (hereinafter called petitioner) determined a deficiency of $34,156.50 in the income tax of the decedent, G. Percy McGlue (hereinafter called respondent) for the year 1935. Respondent's executrix alleged that in such determination petitioner erred in including in respondent's gross income the amounts of $70,806.14 and $9,926.75, representing executor's fees which had been neither allowed by the probate court nor received by respondent up to the time of his death on October 31, 1935. Respondent's executrix further alleged that petitioner erred in including in respondent's gross income $623.31, representing a dividend on certain stock held by respondent. The dividend had been declared prior to the date of respondent's death but, according to the terms of the declaration, was payable to stockholders of a record date that was subsequent to the date of respondent's death.

The facts in this case were stipulated before the Board and are included in the Board's findings of fact. These facts may be thus summarized. On April 1, 1931, respondent and the American Security & Trust Company, both of Washington, D. C., were appointed as co-executors of the estate of B. F. Saul. Saul had previously entered into an agreement with respondent in 1928 and, under this agreement, respondent was to act as co-executor of Saul's estate for a fee of one and one-half per cent. of the appraised value of the entire Saul estate. In his will, Saul appointed respondent and the American Security & Trust Company as co-executors; but in the will there was no reference to the earlier contract and no provision for executors' or trustees' fees.

On January 30, 1932, a federal estate tax return was filed on behalf of the estate of B. F. Saul and a deduction was therein claimed for executors' fees in the amount of $141,612.29 which, it is stipulated, was "estimated at 3% of the gross estate of $4,720,409.75, as shown on said return." An affidavit was filed with the return in support of the deduction claimed for executors' fees, stating that the commissions would be taken upon the final accounting and would be returned as income for the year in which they should be so taken. On the audit of the federal estate tax return filed on behalf of the B. F. Saul estate, the Commissioner allowed the deduction claimed on account of executors' fees.

Since respondent's death, the American Security & Trust Company, as co-executor, has carried on the administration of the Saul estate. Up to the time of the hearing of this proceeding before the Board, no final accounting of the B. F. Saul estate had yet been prepared for, or filed with, the probate court. Moreover, the contract between respondent and B. F. Saul, regarding respondent's executorship of the Saul estate, had not been filed with the probate court and no proof of claim for executors' fees under the contract had been submitted.

Respondent had also been appointed co-executor of the estate of James F. Shea, who had died on September 24, 1934. This appointment had been made by Shea in his will. On June 27, 1935, a federal estate tax return was filed on behalf of the James F. Shea estate, in which a deduction was claimed for "estimated executors' commissions, in the sum of $37,000." The amount thus claimed was not finally allowed.

Respondent died on October 31, 1935; and, up to this date, no report had been filed with the probate court by the executors of the James F. Shea estate and no executors' fees or commissions had been claimed before, or allowed by, the court. The first accounting of this estate was filed in February, 1936, by the surviving co-executor, after approval by the residuary legatee. In this report, executors' fees in the amount of $9,926.75 were claimed on behalf of respondent's estate. The report was approved, and the commissions thus claimed were allowed, by the probate court on February 20, 1936. Audit of the federal estate tax return filed on behalf of the James F. Shea estate was not made until after the probate court's allowance of the executors' commissions. Accordingly, such

commissions were allowed as a deduction in the return.

In a companion case heard concurrently with the instant proceeding (McGlue v. Commissioner, 41 B.T.A. 1199), the Board held that the two items of executors' fees, discussed above, should be included in respondent's gross estate for the purpose of the federal estate tax. Nevertheless, in the instant case, the Board held that the fees or commissions had not "accrued" prior to respondent's death, and, therefore, were not to be included in the determination of his income for the period from January to October 31, 1935.

Petitioner had also added to respondent's gross income for the year in which his death occurred the amount of $626.31, representing a quarterly dividend on the preferred stock of Bourjois, Inc. The dividend had been declared during the week of October 19, 1935, prior to the date of respondent's death, and was payable on a date subsequent to his death, November 15, 1935, to the stockholders of a record date subsequent to his death, November 1, 1935. The dividend was actually paid on November 15, 1935. The Board held that the dividend likewise had not "accrued" prior to respondent's death and, hence, should not be included in his income for the period from January to October 31, 1935.

 Although prior to his death respondent kept his accounts on the cash receipts and disbursements basis, respondent's income for the period from January 1, 1935, to the date of his death, October 31, 1935, must be determined on the so-called accrual basis. Section 42, the Amendment found in the Revenue Act of 1934, states, 26 U.S.C.A. Int.Rev.Code, § 42: "The amount of all items of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under methods of accounting permitted under section 41, any such amounts are to be properly accounted for as of a different period. In the case of the death of a taxpayer there shall be included in computing net income for the taxable period in which falls the date of his death, amounts accrued up to the date of his death if not otherwise properly includible in respect of such period or a prior period."

The two items herein involved, the executors' fees and the dividend, are separately discussed in our opinion.

## Executors' Fees.

 Had respondent been alive, and had he kept his books on the "accrual basis" (as that term has been interpreted in many court decisions), we should feel obliged to uphold the Board's findings that the executors' fees could not have accrued prior to the allowance and approval of these fees by the probate court. See Pletz v. Commissioner, Dec. 20, 1940, 43 B.T.A. 140; cf. Commissioner v. Cadwalader, 3 Cir., 1937, 88 F.2d 274, 275, certiorari denied, 301 U.S. 706, 57 S.Ct. 940, 81 L.Ed. 1360. Under the law of the District of Columbia, which controls here the question of executors' fees, there is a strong public policy favoring the ultimate approval of all executors' commissions by the probate court. As Justice Van Orsdel said, in speaking of the applicable District of Columbia statute, in Brosnan v. Fox, 1922, 52 App.D.C. 143, 284 F. 923, 925, 926:

"In other words, the limitation [of the statute] operates and commissions are available only when the administration is closed and a final settlement approved. It is then, and only then, that the court has before it complete evidence of the amount and character of services performed, upon which he may intelligently base an allowance. It follows, therefore, that an executor prior to final settlement of the estate, or the termination of his services in connection with the estate, is not entitled to an allowance of commissions. * * *

"And if by reason of the will being ultimately adjudged invalid, or for any other reason, his services should cease, then, upon rendering his final account and turning over the estate to his successor, a reasonable allowance as compensation for his services should be made, with special reference, however, to the further services likely to be required of his successor, so that justice may be accorded each and the limitations of the statute observed."

Thus, notwithstanding the contractual arrangement previously concluded with B. F. Saul (cf. Washington L. & T. Co. v. Convention of P. E. Church, 1923, 54 App. D.C. 14, 293 F. 833, 34 A.L.R. 913), it could not be said that all the essential events had occurred which fixed the amount of respondent's fees. Cf. United States v. Anderson, 1926, 269 U.S. 422, 441, 46 S.Ct. 131, 70 L.Ed. 347. See Lucas v. North Texas Lumber Co., 1930, 281 U.S. 11, 50 S.Ct. 184, 74 L.Ed. 668; North American

170

Oil Consolidated v. Burnet, 1932, 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197; Brown v. Helvering, 1934, 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725.

However, our interpretation of section 42, supra, is directly controlled by the very recent holding of the United States Supreme Court in Helvering v. Estate of John M. Enright, 61 S.Ct. 777, 85 L.Ed. ——, decided March 31, 1941, wherein a much broader definition was given to the word "accrue" under section 42 than had previously been given to this word in the cases cited above. Speaking for an unanimous court, Mr. Justice Reed stated with specific reference to section 42 (61 S.Ct. page 781):

"While 'accrue' and its various derivatives are not new to the nomenclature of accounting or taxation, its use has not sufficed to build it into a word of art with a definite connotation when employed in describing items of gross income. * * *

"It is to be noted that no change was made by the 1934 Act in the § 48 definition of 'accrued.' Yet, it is obvious that the definition is inapplicable since a taxpayer on a cash basis cannot have a 'method of accounting' by which the meaning of accrual is fixed. Consequently it is beside the point to give weight to provisions of the regulations or accounting practices which do not recognize accruals until a determination of compensation. Such provisions when applied bring the income into succeeding years. It has been frequently said, and correctly, that § 42 was aimed at putting the cash receipt taxpayer on the accrual basis. But that statement does not answer the meaning of accrual in this section. *Accounts kept consistently on a basis other than cash receipts might treat accruals quite differently from a method designed to reflect the earned income of a cash receipt taxpayer. Accruals here are to be construed in furtherance of the intent of Congress to cover into income the assets of decedents, earned during their life and unreported as income, which on a cash return, would appear in the estate returns.* Congress sought a fair reflection of income." (Italics added.)

Hence, while a living taxpayer on the accrual basis might not record the instant fees as accrued income, yet under Helvering v. Estate of John M. Enright, we think, the fees must here be treated as "accrued" and, therefore, taxable. They seem to fall directly within the

definition of "accrued income" as stated by Mr. Justice Reed: "Accrued income under § 42 for uncompleted operations includes the value of the services rendered by the decedent, capable of approximate valuation whether based on the agreed compensation or on quantum meruit. The requirement of valuation comprehends the elements of collectibility."

Certainly there is no contingency or uncertainty qualifying respondent's right to at least a quantum meruit recovery. Cf. Seattle First Nat. Bank v. Henrickson, D.C.W.D.Wash.1938, 24 F.Supp. 256, appeal dismissed, 9 Cir., 1939, 100 F.2d 1015. Under section 42, respondent's claim was "fixed", rather than "inchoate" or "in the process of becoming." Compare Spring City Foundry Co. v. Commissioner, 1934, 292 U.S. 182, 184, 185, 54 S.Ct. 644, 78 L.Ed. 1200, with United States v. Safety Car Heating & Lighting Co., 1936, 297 U.S. 88, 99, 56 S.Ct. 353, 80 L.Ed. 500.

The precise question in the Enright case is thus stated in Mr. Justice Reed's opinion:

"The issue is whether § 42 of the Revenue Act of 1934 permits the inclusion, as accruable items, in a decedent's gross income for the period ending with his death of his share of the profits earned, but not yet received, of a partnership, when both the decedent and the partnership reported income on a cash receipts and disbursements basis.

"Respondents are the executors of John M. Enright, an attorney and member of a law partnership in New Jersey. Both Mr. Enright and his firm kept their accounts and made their income tax report on a calendar year cash receipts and disbursements basis. He died, testate, November 19, 1934. The partnership agreement provided for the termination of the partnership on the death of any partner and that his estate should have his partnership percentage in the 'net monies then in the treasury of the firm, plus his like percentage in the outstanding accounts and the earned proportion of the estimated receipts from unfinished business.' " (61 S.Ct. page 778).

And in Pfaff v. Commissioner, 61 S.Ct. 783, 85 L.Ed. ——, decided also March 31, 1941, Mr. Justice Reed again said:

"This case presents the same question as Helvering v. Enright, * * * decided today. Petitioners are the executors of a deceased physician who during 1935 was a member of a medical partnership and

entitled to forty per cent of its profits. He died December 25, 1935, on which date there were outstanding about $69,000 of partnership accounts receivable for services rendered to patients during his lifetime. His death worked a dissolution of the partnership under § 62(4) of the New York Partnership Law, Consol.Laws, c. 39. The decedent's interest in these accounts came to over $27,000. Both he and the partnership were on a cash basis. * * *

"There is no relevant difference between these facts and Helvering v. Enright. For the reasons stated in that opinion it was proper to include in the decedent's 1935 income the fair value of his interest in the accounts."

It was the intention of Congress in enacting section 42 to reach all income earned during the life of a decedent that would otherwise escape the income tax. In giving recognition to this congressional intent, and this was the rationale of the Enright case, the Board must be reversed on the question of executors' fees. See H. Rep. No. 704, 73d Cong., 2d Sess., p. 24; S. Rep. No. 558, 73d Cong., 2d Sess., p. 28.

*Declared Dividends.*

The Board held that the dividend on the preferred stock which had been declared prior to respondent's death, but which was payable at a date subsequent to respondent's death and payable to stockholders of a record date subsequent to his death, had not "accrued" within the meaning of section 42. The dividend had been declared by Bourjois, Inc., a New York corporation. Therefore, for the purpose of construing the effect of this declaration of dividends, as to the rights and duties of the stockholder and corporation, we must examine the New York law.

No real question arises as to the general rule that dividends become the property of the owner of stock at the date of declaration. See (1929) 15 Va.L.Rev. 804, 805. There is some controversy, however, as to the effect of such a declaration where the dividends are payable in the future to stockholders of a future record date. Compare Ford v. Snook, 4th Dep't, 1923, 205 App.Div. 194, 199 N.Y.S. 630, affirmed per curiam, 1925, 240 N.Y. 624, 148 N.E. 732, with Richter & Co. v. Light, 1922, 97 Conn. 364, 116 A. 600. Prior to the adoption of section 62 of the New York Stock Corporation Law, Consol.Laws, c. 59, it seems to have been well settled in

New York that the owner of stock at the date of the declaration of a dividend secured a vested, property right; and that the provision for payment to stockholders of record of a certain future date was a mere convenience for the sole benefit of the corporation. Ford v. Snook, supra; In re Booth's Estate, Surr.Ct.1931; 139 Misc. 253, 248 N.Y.S. 264; see Note (1924) 38 Harv.L.Rev. 245. The New York rule was tersely stated by Judge Davis in Ford v. Snook, 205 App.Div. 194, 199 N.Y.S. at page 632:

"The provision in a resolution declaring a dividend, relative to its being payable to stockholders of record on a certain day, is intended to serve the convenience of the corporation and to protect it in paying to the persons who appear on its books, where it has no notice of transfer. It does not affect title to the dividend. * * *

"The declaration of a dividend creates no contractual relation between the corporation and the stockholder. Rather it creates a debt in favor of the latter against the corporation. * * *

"When a dividend has been declared out of the earnings of a corporation, such dividend becomes the property of the owners of the shares of stock, no matter whether payable immediately or at a future time. * * *"

The only remaining question is whether section 62 of the New York Stock Corporation Law in any way alters the doctrine of Ford v. Snook. Section 62 reads in part: "The board of directors of a stock corporation * * * may fix a day and hour * * * as a record time for the determination of the stockholders entitled to receive any such dividend * * *, and in such case only stockholders of record at the time so fixed shall be entitled to receive such dividend * * *."

We are of the opinion that section 62 was passed merely for the purpose of protecting a corporation from liability where, without any notice of a stock transfer, the corporation paid dividends to the person who appeared on its books as the owner of particular stock. (See Note (1938) 27 Geo.L.J. 74, 78. This interpretation of section 62 is strongly suggested by the opinions in Lunt v. Genessee Valley Trust Co., City Ct.1937, 162 Misc. 859, 297 N.Y.S. 27, 30–32, where section 62 was specifically discussed, and In re Wolfe's Estate, Surr.Ct.1935, 155 Misc. 190, 279 N.Y.

S. 605, 608-610, 612, where a similar Virginia statute was considered.

██ As the declaration of the dividend immediately created a corporate debt, we believe that respondent's right to the dividend had "accrued" at the time of his death and that such dividend, therefore, was subject to taxation under section 42. See First Nat. Bank & Trust Co. v. Glenn, D.C.W.D.Ky.1941, 36 F.Supp. 552.

For the reasons expressed above, the decision of the Board is reversed and, as to the executor's fees, is remanded to the Board.

Reversed and remanded.