In the Matter of the Estate of MAX R. BASHFORD, Deceased.

Surrogate's Court, New York County, June 30, 1942.

*Mitchell, Taylor, Capron & Marsh* [*Earle J. Starkey* of counsel], for the petitioner.

*Charles H. Strong,* special guardian.

FOLEY, S. The single question presented in this trustee's accounting is whether certain dividends on shares of stock which were declared prior to the death of the life beneficiary but made payable to stockholders of record on a date subsequent thereto, belong to the estate of the life beneficiary or to the remaindermen of the trust. Differently stated, does the date of the declaration of the dividend or the date of the record of the stockholders fix its ownership?

Among the assets of the trust were shares of common stock in the General Electric Company, a corporation organized under the laws of the State of New York, and shares of preferred stock of General Motors Corporation, a Delaware corporation. On September 4, 1941, the General Electric Company declared a dividend on its common stock payable to stockholders of record on September 19, 1941. The dividend declared by General Motors Corporation on August 4, 1941 was payable to stockholders of record on October 6, 1941. The life beneficiary of the trust died on September 18, 1941 and the remaindermen thereupon became entitled to the corpus of the trust and to all income thereafter accruing. The trustee has collected the dividends and has asked instructions as to whether it should pay them to the executor of the deceased life beneficiary or to the remaindermen.

The profits earned by a corporation form part of its general assets and until they are separated from the general assets by appropriate corporate action, no part of the earnings vest in the individual shareholders. At the point of time when the income is severed from the corporate assets and appropriated to the stockholder, the dividend vests in the person then owning the shares of stock. An obligation in the nature of a debt is created in favor of the shareholder against the corporation. (*Matter of Kernochan,* 104 N. Y. 618; *Hopper* v. *Sage,* 112 id. 530; *Ford* v. *Snook,* 205 App. Div. 194; affd., 240 N. Y. 624; 2 Scott on Trusts, § 236.2, p. 1297.) This rule has been applied not only as between seller and purchaser of stock but also as between successive beneficiaries of a trust of which the shares are part of the corpus. (*Matter of Kernochan, supra;* Scott on Trusts, *supra.*)

When the board of directors declares a dividend payable immediately or at some future time without specifying a date on which the stockholders entitled to such dividend are to be determined, the rule is well settled that the dividends belong to the owner of the stock on the day the dividend was declared. (*Matter of Kernochan, supra; Hopper v. Sage, supra;* Restatement, Law of Trusts, § 236, comment n, p. 708.) On the other hand, when the directors not only fix a date for payment of the dividend but provide that it shall be payable only to stockholders of record on a day certain, there is a conflict of authority as to the time when the dividend vests in the shareholder. (38 Harv. L. Rev. 245; 7 Ohio St. L. J. 437; 27 Geo. L. J. 74.)

Upon this question of the nature and effect of the corporate act and the rights of the stockholders, the law of the domicile or of the state of incorporation is controlling. (*Graham v. First National Bank of Norfolk,* 84 N. Y. 393; *Union & New Haven Trust Co. v. Watrous,* 109 Conn. 268; 146 A. 727, 730; *Helvering v. McGlue's Estate,* 119 F. [2d] 167, 171.) In respect of the dividend on the General Electric stock, no question of conflict of law can arise, since it is a New York corporation, and in all events the question must be resolved under the law of this State.

The decision in *Ford v. Snook (supra)* is cited as laying down the rule in this State that the date of the declaration of the dividend fixes the rights of the stockholders and that the record date specified in the resolution of the board of directors is immaterial and without effect. Mr. Justice Davis, writing for the Appellate Division, Fourth Department, said: " The provision in a resolution declaring a dividend, relative to its being payable to stockholders of record on a certain day is intended to serve the convenience of the corporation and to protect it in paying to the persons who appear on its books, where it has no notice of transfer." This decision was made in 1923.

In 1930 the Legislature enacted section 62 of the Stock Corporation Law (Laws of 1930, chap. 754), which became effective on April 24, 1930. The effect of this statute was to abrogate the rule announced in *Ford v. Snook (supra)* and to prescribe a new method for determining the ownership of a dividend. It reads as follows: " The board of directors of a stock corporation, unless otherwise provided in the certificate of incorporation or other certificate filed pursuant to law or in the by-laws, may fix a day and hour not exceeding forty days preceding the date fixed for the payment of any dividend * * * as a record time for the determination of the stockholders entitled to receive any such dividend * * * and in such case *only stockholders of record at the time so*

*fixed shall be entitled to receive such dividend* \* \* \*." (Italics mine.)

It is apparent that this statute was intended by the Legislature to accomplish more than convenience and protection of corporations. It fixes the rights of stockholders and determines the persons entitled to receive such dividends under the conditions set forth. At the time when, in contemplation of law, there is a separation of the amount of the dividend from the assets of the corporation, an obligation in the nature of a debt is created in favor of the stockholder against the corporation. (*Hopper* v. *Sage, supra* 534; *Ford* v. *Snook, supra*.) By virtue of the terms of section 62 of the Stock Corporation Law, the debt is created at the time fixed for the determination of the stockholders entitled to receive the dividend and it arises only in favor of " stockholders of record at the time so fixed.

Unless this statute is so interpreted, it is without purpose or effect. For many years prior to the enactment of this statute, a corporation which paid dividends to the record owner of stock, in good faith, and without notice of any transfer of the stock, was amply protected. (*Brisbane* v. *Delaware, L. & W. R. R. Co.*, 94 N. Y. 204, 207; *Ford* v. *Snook, supra*.) Section 164 of the Personal Property Law (Uniform Stock Transfer Act; Laws of 1913, chap. 600) provides that nothing in that act shall be construed as forbidding a corporation to " recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends." This section is part of the Uniform Stock Transfer Act (§ 3). " This provision is necessary for the protection of the corporation." (Commissioners' Note, 6 Uniform Laws Ann., p. 9.) The corporation was thus protected in paying the dividends to those appearing on its books as the owners unless it had notice of a transfer of the stock. (*Turnbull* v. *Longacre Bank*, 249 N. Y. 159, 166; *Brisbane* v. *Delaware, L. & W. R. R. Co., supra*.)

It is asserted that section 62 " was passed merely for the purpose of protecting a corporation from liability where, without any notice of a stock transfer, the corporation paid dividends to the person who appeared on its books as the owner of particular stock." (*Helvering* v. *McGlue's Estate, supra* 171.) I am compelled to disagree with that conclusion. If that were the purpose of the statute, it was a futile gesture because such protection had for many years been accorded to the corporation by decision and by statute. Moreover, the plain language of section 62 clearly indicates that its purpose was much broader. In defining the persons " entitled to receive such dividend," its manifest intent was to make the recording date the determining time for the severance of the dividend from the corporate assets rather than the declaration date. Clearly,

it determines the persons in whose favor a right is created as against the corporation.

The rule enunciated in *Ford* v. *Snook* (*supra*) was completely nullified by the enactment of section 62 of the Stock Corporation Law. (Meyer on The Law of Stockbrokers and Stock Exchanges, pp. 167, 168.) The provisions of the statute must be read in the light of the history of the act itself and acts in *pari materia* as well as previous judicial decisions and established legal rules. (*People* v. *Home Insurance Co.*, 92 N. Y. 328, 339; *Matter of Hamlin*, 226 id. 407, 414; *Orinoco Realty Co.* v. *Bandler*, 233 id. 24, 30; *Matter of Cole*, 235 id. 48, 53; *Matter of Frasch*, 245 id. 174, 180.) " By such examination we are enabled to see the general nature of the scheme inaugurated by the legislature and its relation to prior and existing laws * * *." (*People* v. *Home Insurance Co.*, *supra*.) " As bearing upon the intention of the legislature of this state in the enactment of a statute we may consider such historical or other facts as are reasonably within the scope of judicial cognizance." (*Matter of Hamlin*, *supra*, 414.) The courts will not impute to the lawmakers a futile intent or read into a statute a limitation which would render it futile. (*Lederer* v. *Wise Shoe Co.*, 276 N. Y. 459, 465; *Matter of Rouss*, 221 id. 81, 90; *Matter of Herle*, 165 Misc. 46, 52.)

The rule inaugurated by this statute accords with the trend of the modern authorities. (*Nutter* v. *Andrews*, 246 Mass. 224; 142 N. E. 67; *Union and New Haven Trust Co.* v. *Watrous*, *supra;* *Richter & Co.* v. *Light*, 97 Conn. 364; 116 A. 600; *Matter of Wuichet*, 138 Ohio St. 97; 33 N. E. [2d] 15; *Matter of Opperman*, 319 Penn. St. 455; 179 A. 729, 734; *Wilmington Trust Co.* v. *Wilmington Trust Co.*, — Del. Ch. —; 15 A. [2d] 665; *Buchanan* v. *National Savings & Trust Co.*, 23 F. [2d] 994; *Smith* v. *Taecker*, 133 Cal. App. 351; 24 P. [2d] 182; 2 Scott on Trusts, § 236.2; Restatement, Law of Trusts, § 236.)

Professor Scott in his treatise on the Law of Trusts states the applicable rule thus: " The general rule is that a dividend belongs to those who are owners of the shares at the time when it is declared, and not to those who are owners of the shares at the time when it is payable. It is held that by the declaration of the dividend by the corporation the dividend is separated from the assets of the corporation and a debt to those who are shareholders at the time of the declaration is created, although payment of the debt is postponed. Where, however, the dividend is payable to shareholders of record on a specified date, those who are owners of the shares at that date are entitled to the dividend, since the debt created by the declaration is a debt to those who are shareholders on that date."

In *Matter of Robb* (178 Misc. 240), Surrogate McGarey, after carefully reviewing the authorities, held that " the rights of the respective beneficiaries of a trust or claimants to dividends in an estate, should be determined by their status on the record date, in the absence of any controlling provision in the law." I am completely in accord with his reasoning and his conclusion.

The decisions in this State which are cited as upholding a contrary rule, when carefully analyzed, are found to be inapplicable to the facts here present. *Matter of Booth* (139 Misc. 253) involved a declaration of dividend and a record date both of which antedated the enactment of section 62 of the Stock Corporation Law. In *Matter of Wolfe* (155 Misc. 190) the dividend was declared by a Virginia corporation. In construing the resolution of the board of directors, the surrogate determined that a separation of the assets occurred at the time of the declaration. He pointed out that: " It need not be doubted that a dividend declaration might lawfully prescribe a future separation of corporate assets and a future creation of a right of stockholders therein * * *. Here the creation of the right in the stockholder body is *in praesenti*. Payment only is *in futuro*." No question of the construction or effect of any New York statute was involved. In *Matter of Wanzer* (177 Misc. 929) the record date apparently was not included in the submission of facts.

The surrogate, therefore, holds that the resolution of the board of directors of the General Electric Company declaring a dividend payable to stockholders of record on September 19, 1941 did not create a debt in favor of any stockholder prior to that date. The life beneficiary died on September eighteenth and her estate is not entitled to any portion of the dividend. The remaindermen of the trust are entitled to receive the full amount of the dividend since they were the beneficial owners of the stock on the date when the dividend vested in the shareholders.

The same rule is applicable to the dividend declared on the stock of the General Motors Corporation. The life tenant died before the record date. The law of the State of Delaware is in accord with modern authority and with the law of this State. (*Wilmington Trust Co.* v. *Wilmington Trust Co., supra.*) The court stated the general rule to be that " the estate of the life beneficiary of the income is entitled to all regular cash dividends that have been declared during her lifetime, for the benefit of stockholders of record on dates prior to her death, though such dividends are not actually payable or received by the trustee until dates subsequent thereto."

Submit decree on notice settling the account accordingly.