In the Matter of the Estate of Chauncey M. Depew, Deceased.

Surrogate's Court, New York County, February 27, 1943.

*Anderson, Gasser, Ferris & Anderson* for United States Trust Company of New York, as trustee, petitioner.

*Stewart & Shearer* for United States Trust Company of New York and others, petitioners.

*Simpson, Thacher & Bartlett* for Yale University, respondent.

*Breed, Abbott & Morgan* for Anne Depew Paulding, respondent.

DELEHANTY, S. Deceased died in 1928 leaving a last will and testament which in subdivision I of the nineteenth paragraph put one half of the residue of the estate in trust for the benefit of his wife. The latter's death in 1940 terminated the trust. By reason of the death of deceased's son before deceased's widow the capital of the trust is payable in part to collateral relatives of deceased and to the husband of one of them and in part to Yale University. The University interposed objections to the account because of a proposed allocation of certain of the income to the estate of the now deceased wife. Like objection is made by certain individual remaindermen.

A stipulation of facts has been filed. No facts are in controversy.

[The opinion holds that amortized premiums on securities sold at a profit must remain in principal account. It next discusses dividends received on six corporations and orders two of these dividends apportioned for reasons peculiar to the particular dividends.]

The discussion now reverts to the four dividends which have no distinguishing features and which must be considered in the light of applicable law respecting corporate dividends and in the light of any applicable rules affecting the administration of trust estates. Some of the parties assert that the question at issue is controlled by section 62 of New York Stock Corporation Law█ or by applicable statute or case authority in the juris-

dictions in which the respective declaring corporations are domiciled. The nature of the problem and the degree to which estate administrations are involved in the correct solution of it warrant somewhat detailed consideration of cases cited by counsel as applicable to the problem and of the statute said to be applicable.

Section 62 of the Stock Corporation Law is found in the article which deals with the powers and liabilities of directors and officers of corporations. This article precedes the one which deals with the liabilities and rights of stockholders. The section undoubtedly had its roots in section 3 of the Uniform Stock Transfer Act which was urged upon the Legislatures of the various States by the Commissioners on Uniform Laws. In 6 Uniform Laws Annotated, published in 1922, section 3 of the Uniform Stock Transfer Act is published in this text: " § 3. *Corporation not forbidden to treat registered holder as owner.* — Nothing in this act shall be construed as forbidding a corporation, (a) to recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends, and to vote as such owner. * * * " To this text the Commissioners on Uniform Laws appended a note which says: " This provision is necessary for the protection of the corporation." Both the place where the comparable section 62 of the New York Stock Corporation Law is found and its text support the view that the provision is intended for the protection of the corporation. The section deals not alone with dividends but also with the manual delivery of evidences of rights and the manual distribution of certificates. That the provision is intended for the protection of the corporation is evident from the last sentence of the section which permits the corporation for a limited period to refuse to make transfers of stock on its books notwithstanding actual transfers of title thereto. In other words, the corporation for its own protection may ignore actual transfers so far as such transfers would confuse the administration of the corporate affairs or would impose upon the corporation the burden of inquiry into the legal status of parties claiming stock distribution, stock rights or stock or cash dividends.

When the statute was passed it was settled law that courts would presume that any radical legislative change affecting settled property rights or settled rules of liability would be expressed by the Legislature " with the clearness which the importance of the subject demands, or so that its meaning is unmistakable." (*Seligman* v. *Friedlander,* 199 N. Y. 373, 376.)

The cited case comments on the force in the fact that a supposed innovation has escaped for years the attention of the bar, the courts and the public. The latter comment is especially pertinent here because section 62 of the New York Stock Corporation Law was enacted effective April 24, 1930, and during the eleven full years which passed before any court adopted a view that it had revolutionized property rights thousands of estate administrations had been closed on the basis of the law declared in the cases theretofore decided. Such comments as are found in cases prior to *Matter of Robb* (178 Misc. 240 [1942]) and *Matter of Bashford* (178 Misc. 951 [1942]) all agree in conceiving the statute to have been passed for corporate protection only and to have had no effect upon the principles of law theretofore declared in respect of beneficial ownership of dividends. [The opinion cites and discusses a number of appellate decisions holding that statutory language subject to two constructions must be construed so that no change in established rules of property would be deemed affected by the legislation.]

When *Matter of Kernochan* (104 N. Y. 618) was decided fifty-six years ago the rule of law as to dividend ownership was traceable back at least another half century. The case cites *Cogswell* v. *Cogswell* (2 Ed. Ch. 231 [1834]). The property right thus existent for a century ought not be deemed affected unless the text of the statute demands such a construction. At the risk of repetition the meaning of the statute and its true construction is restated.

When the place of the section in the Stock Corporation Law is noted and the whole of its text is read — necessary preliminaries to its construction — it is seen that the section contains both a *limitation* on the directors and *grants* to them of various powers *in their management of the corporation*. The limitation is in the restriction on the interval between so-called " record time " and the *time* for *payment* of dividends, for *delivery* of evidences of rights and for *distribution* of certificates of shares. The powers granted also include the power within such limit *to fix a day and hour* for the purposes just stated, *to close the corporate books,* to refuse to make *transfers* on the books during an interval and to *use* the corporate records thus *existent on a particular date* as the *standard* for action which the *corporation* might take with safety to the corporation. Nowhere in the section is there any statement that the directors have power to affect any property rights of stockholders. There is an express grant of power to *ignore* such rights if they accrue during the interval " not exceeding forty days " prior to the

payment of dividends, the delivery of rights or the distribution of shares. That in this interval rights and liabilities may accrue which the courts must adjudge without regard to section 62 of the Stock Corporation Law is evident from the reported cases. (Compare *Broderick* v. *Aaron*, 264 N. Y. 368, 373–378; *Broderick* v. *Alexander* [*Kahn*], 268 N. Y. 306, 309, 310.) No one can say validly that a construction of this statute to the effect that it is one intended for the protection of the corporation is inadmissible. The fact is that it has been so construed both by courts of original and appellate jurisdiction. It follows of necessity that when a statute is properly susceptible of a construction which leaves common-law rights and settled property rights untouched that construction *must* be adopted by the command of the cases cited above.

The rule of law as to ownership of corporate dividends existent for more than a century prior to 1930 was declared in *Matter of Kernochan* (*supra*) more than a half century ago thus: "As soon as the profits on shares of stocks are ascertained and declared, they cease to be the property of the company, and the owner of the shares becomes entitled to the dividend. It at once forms part of his estate. The fact that they are made payable at a future time is immaterial." A more familiar statement is found in *Ford* v. *Snook* (205 App. Div. 194, 196) where the court says: "The provision in a resolution declaring a dividend, relative to its being payable to stockholders of record on a certain day is intended to serve the convenience of the corporation and to protect it in paying to the persons who appear on its books, where it has no notice of transfer. It does not affect title to the dividend. * * * When a dividend has been declared out of the earnings of a corporation, such dividend becomes the property of the owners of the shares of stock, no matter whether payable immediately or at a future time." This is the rule which has been applied in the closings of estates for decades past including the decade which has elapsed since section 62 of the Stock Corporation Law became effective. Some cases arising since 1930 which discussed the rule are next examined.

[The opinion then discusses *Matter of Wolfe* (155 Misc. 190); *Lunt* v. *Genesee Valley Trust Co.* (162 Misc. 859); *Helvering* v. *McGlue's Estate* (119 F. 2d 167) and *Matter of Wanzer* (177 Misc. 929). Each of these cases is distinguished on the facts.]

The next case considered is *Matter of Robb* (178 Misc. 240) decided in March, 1942. There the question arose between the estate of a primary life beneficiary and the living beneficiary

of a secondary life estate. One block of stock had been sold by the trustee prior to the record date and the trustee *did not receive the dividend thereon nor any part thereof.* The other block of stock was held by the trustee on the record date and he received the dividend. In his opinion the Surrogate referred to *Matter of Armstrong* (N. Y. L. J., Feb. 10, 1936, p. 741 [FOLEY, S.]) and no doubt because of some error in the report to him of this proceeding said that the question here involved " was not raised, passed upon or discussed." He concluded on the facts before him that the estate of the primary life beneficiary was not entitled to any part of either dividend; that neither life beneficiary was entitled to any money on account of the dividend paid on the stock sold by the trustee before the record date; and that the secondary life beneficiary was entitled to the whole of the dividend on the shares retained by the trustee and owned by it on the record date. In this case it is obvious that the ruling in respect of the dividend *not* received by the trustee does not touch the question here presented. It seems to the court also that on a basis which will be stated later in this decision the ruling as to the other dividend was right for reasons making the decision not controlling here.

At this point the facts in *Matter of Armstrong* (*supra*) should be discussed briefly. In that proceeding the fiduciary's petition asked the court to adjudge " the amount payable if any to the estate of " the deceased life beneficiary. Formal objections filed by the executor of the deceased life beneficiary claimed three dividends reported in the account as having been received in 1934 as follows: (1) United States Steel Corporation preferred (a New Jersey corporation), five dollars, received August 30, 1934, following a declaration of dividend made July 31, 1934, which fixed a record date of August 2, 1934, (2) Union Pacific preferred (a Utah corporation), fifty dollars, received October 1, 1934, pursuant to a dividend declaration of August 9, 1934, which fixed September 1, 1934, as the record date and (3) General Motors (a Delaware corporation), eighty-three dollars and seventy-five cents, received November 1, 1934, pursuant to a dividend declaration of August 6, 1934, which fixed October 8, 1934, as the record date. The facts as to the *declaration* date, the *record* date and the *payment* date were stipulated in respect of each dividend. The special guardian filed a brief whose point VI discriminated among the dividends and argued expressly that the *record* dates were in each instance controlling. The brief of the deceased life tenant's executor in its point III asserted that the controlling date was the *declaration* date. On

the issue thus clearly drawn the court said: "I hold that the dividends declared during the life of the beneficiary of the trust created by the third codicil but not paid until after her death are now payable to her estate. These dividends are trust income earned during the life of the beneficiary. A dividend is the property of the owner of the stock at the time of the declaration whether payable immediately or at a future time. (*Ford* v. *Snook*, 205 App. Div. 194, 196; *Matter of Booth*, 139 Misc. 253.) "

Next in point of interest is *Matter of Bashford* (178 Misc. 951) decided in June, 1942. In that case there was in issue, among others, a dividend on General Motors stock. A dividend on the same stock was involved in the *Armstrong* controversy. In the *Bashford* case the court held that all dividends declared prior to the death of the life beneficiary but payable on a record date after her death belonged wholly to the remaindermen, saying that the rule in *Ford* v. *Snook* (*supra*) " was completely nullified by the enactment of section 62 of the Stock Corporation Law." The case makes no mention of the *Armstrong* decision and presumably the direct conflict between the *Bashford* result and that in the *Armstrong* case was overlooked.

The *Armstrong* decision highlights the rule of statutory construction which has already been commented upon. In view of its text we must assume that the operative effect of a legislative enactment of 1930 had gone wholly unnoticed by bench and bar for at least six years when the *Armstrong* case was decided. Neither the courts nor the profession — as the *Armstrong* and other cases show — believed in 1936 or before 1942 that century-old property rights had been nullified by the statute of 1930. Indeed the cases already discussed show that there was no suggestion called to the attention of either bench or bar of such effect of the statute until more than a decade has passed after the enactment of the section. In such circumstances it is *commanded* by controlling authority that the statute be construed so as not to disturb settled property rights. Under the authorities thus deemed by the court controlling upon it, the court holds that section 62 of the Stock Corporation Law does not affect the question now presented to the court for decision.

This court is of the view that section 62 of the Stock Corporation Law has no real application to the administration of trust estates. The section patently is intended to operate only in respect of *legal title* and not in respect of equitable rights to *beneficial* enjoyment. Since the trustee in the usual situation owns the *legal* title to the security on the declaration, the record,

and the payment dates, there arises no reason to refer at all to section 62 of the Stock Corporation Law. When (as in one issue arising in *Matter of Kernochan* [*supra*] and in the issue presented in *Matter of Wolfe* [*supra*]) the question is as to what constitutes the capital *of a deceased* the dates are not of consequence since the real inquiry is as to what the deceased intended his beneficiaries to enjoy. Or when (as in *Lunt* v. *Genesee Valley Trust Co.* [*supra*] and *Ford* v. *Snook* [*supra*]) the issue is between *purchaser* and *seller* each of whom claims *legal* title, the corporation — as in the *Lunt* case — can resort to section 62 for exoneration. But where the question is one of *beneficial enjoyment of net trust income* section 62 is without pertinence. The dividends are *owned* by the trustee. Only what is left of them after expenses of collection and administration have been subtracted will pass — losing identity in the process — into the pool of money in which equitable rights exist. What is to be done with that pool of money does not and ought not depend on whether a trustee has selected for investment the securities of corporations domiciled in State X rather than in State Y or State Z. It would be a curious distortion of the intention of a testator to construe his will as intending that the benefits due to his beneficiaries should be regulated by so capricious a standard.

That the intent of the testator furnishes the true test of the right to beneficial enjoyment of net trust income scarcely needs be stated. The courts diligently protect in particular the right of the life tenant to enjoy the full benefits intended for him or her. Not only true income but the sales proceeds (in part) of unproductive property are held due to the income beneficiary because that is the rule of the will. The courts have been astute to find the rule of the will to be protective of the income beneficiary's rights. Thus in *Matter of Rowland* (273 N. Y. 100) the court held that the proceeds of the sale of property productive at death but becoming unproductive during administration must be shared equitably with the income beneficiary. So, too, in *Matter of Clarke* (166 Misc. 807) the proceeds of an art collection were shared with the income beneficiary — because of an assumed intent of the will. This *Clarke* result was cited with approval in *Matter of Pennock* (285 N. Y. 475, 482) where a unanimous court (affirming this court) held that an insurance-commissions contract constituted estate *capital*. Concomitantly, a bare majority of the court found in the will there in issue an intent to benefit the life beneficiary and directed that she have part of the current receipts under the contract — drawing an

analogy with *Matter of Rowland* (*supra*) to reach that result.

The right of the income beneficiary to have income earned on the trust capital during his life has a long history of statutory and judicial approval. It was said in *Matter of Lamb* (182 App. Div. 180, 188) that any program which deprived the life beneficiary of income earned while he lived and paid it over to the remainderman constituted an unlawful accumulation. This case was affirmed without opinion (224 N. Y. 577). Like comment is found in *Equitable Trust Co.* v. *Miller* (197 App. Div. 391, affd. without opinion in 233 N. Y. 650). These comments are said in *Matter of Juilliard* (238 N. Y. 499, 510) to have been *obiter* and the cases were distinguished because, as the court in the *Juilliard* case said, the will at issue in each of the cited cases had directed an apportionment. The *Juilliard* case reviews (pp. 509, 510) the origin of the rule for apportionment which is now in section 204 of the Surrogate's Court Act. The discussion is of pertinence here because it emphasizes a fact which transcends the arguments based on section 62 of the New York Stock Corporation Law. The original public policy was to prevent any type of accumulation which might be implicit in directing that income accruing during one life should be payable in any circumstances to principal account. The *Juilliard* case points out that the change accomplished by the statute of 1875 (now carried into section 204 of the Surrogate's Court Act) was not intended to permit an accumulation but was intended to give freedom of action to a testator in determining who should receive payment when income was actually in hand. Thus, a testator may validly direct that accrued but unpaid income go to the remainderman. Such a direction is held to be an express direction against apportionment within section 204 of the Surrogate's Court Act. (*Matter of McManus,* 282 N. Y. 420, 424.) But lacking such a direction, the law still is that such income is not payable to the remainderman but goes instead to the estate of the deceased life beneficiary.

Comment has been made above that the result in the *Robb* case was right without regard to section 62 of the Stock Corporation Law. It was right because patently the rule of that will could have been enforced only by making an uninterrupted application of income to the respective individuals named by the testator to take it *at the time it was paid.* The *Robb* will said that all income was to be applied first to life beneficiary number one and second to life beneficiary number two. The even flow of income payments was designed by the will to continue though the identity of the recipient changed. As between

two people entitled successively to *income* no basis for discrimination can be found in the ordinary will and so neither declaration nor record date is important. Only the payment date matters.

But when the ordinary will is scrutinized to see what it declares respecting the comparative rights of life beneficiary and remaindermen it will generally be seen that *all the income* is ordered paid to the life beneficiary and *only the capital* is deliverable to the remaindermen. In the absence of express language in a will passing accrued but unpaid income over to the remaindermen the trend of the authorities is definitely to give it to the life beneficiary. This trend is seen in the old case of *Matter of Kernochan* (*supra*) and is emphasized in all but one of the recent cases as the cited authorities show.

With that general rule in mind the texts of the *Bashford* and *Armstrong* wills are of interest. In the *Bashford* will the direction as to income was " to apply the net amount of such issues and profits \* \* \* to the use of (deceased's wife) during the term of her natural life." The trustee was directed at the death of the wife " to transfer, pay over and distribute the *principal* of the trust fund \* \* \* " to the remaindermen (emphasis supplied). In the *Armstrong* will the direction was " to collect all the rents, income, issues and profits of said trust estate \* \* \* and to apply the net income derived therefrom to the use of " deceased's daughter " as long as she shall live." When she died the will directed " that the *principal* of this trust estate " shall go into the residuary. (Italics supplied.) In both these wills therefore the rule of the will was that the remaindermen should have *only the principal of the trust*. The *Armstrong* decision conformed to the rule of the will by declaring: " These dividends are trust *income earned during the life* of the beneficiary " (italics supplied); and by denying to the remaindermen any share in them. The accrued " income earned during the life of the beneficiary " went to the remaindermen in the *Bashford* case. That such dividends were income is indisputable. A simple test can be made by assuming that the command of the *Bashford* will was that these dividends should be added to principal and continued with the original capital in trust for adult beneficiaries. Such a direction for accumulation would be void of course. (*Matter of Juilliard, supra*.)

It seems to this court that the result reached in the *Armstrong* case was right; and for the reason stated in the *Armstrong* decision. Ordinary cash dividends declared currently during

an ordinary trust administration though unpaid on the termination of the trust constitute " income earned during the life of the beneficiary." Unless the will says affirmatively that such unpaid dividends are payable to the remaindermen they belong to and should be paid to the estate of the income beneficiary. They represent the earnings, issues and profits of the trust estate given by the will to the income beneficiary. They must have been earned before the declaration date since directors may not declare dividends unless a surplus exists at the time of the declaration. The presumption attaching to cash dividends is that they are payable from a surplus representing current earnings and hence are not due to a remainderman entitled only to capital.

The Depew will says: " I give, devise and bequeath *one-half of my residuary estate* " to a trustee " to collect and receive the income thereof and after payment out of such income all taxes and other charges properly payable by it therefrom to pay the remainder of such income to my wife quarterly during her life." It then says: " At the death of my wife, I direct said trustee to convey, assign, transfer and deliver * * * *said one-half* of my residuary estate " to the remaindermen. Such text entitles Mrs. Depew's estate to all the true cash dividends declared in her lifetime, no matter when paid and irrespective of what the law may have been declared to be in the States of domicile of the declaring corporations in controversies between a seller and a purchaser of shares.

[Other directions included in the opinion of the Surrogate omitted because of their subordinate importance.]

Submit, on notice, decree settling the account accordingly.